Samuel A. Donald v. Caroline E. Donald—Opinion of Court.

SAMUEL A. DONALD, APPELLANT, VS. CAROLINE E. DONALD, APPELLEE.

1. The term "extreme cruelty" in the statute, McClellan's Digest, sec. 7, p. 473, is to be interpreted to mean the cruelty which was ground for divorce a *mensa et thoro* in England.

2. In arriving at a conclusion, as to what cruelty may be properly termed "extreme," the court should consider: (a.) The mental and physical condition of the person upon whom the violence is inflicted. (b.) Whether or not the act of violence was a single and exceptional act, and the provocation under which it was committed. (c.) Whether the circumstances under which it was committed would induce the belief that its repetition was very improbable.

3. "Extreme cruelty" sufficient to authorize a court to grant a divorce does not necessarily mean a bodily injury alone, but includes such conduct on the part of the husband as would cause to the wife continuous and intense mental suffering and danger to her health.

4. Divorce for cruelty is not granted as a punishment for past acts of violence, but on the ground of danger to the wife if the cohabitation continues.

5. Facts not amounting to actual cruelty may be properly stated in a bill for divorce as laying a foundation for subsequent cruelty, and to show the true relations between the parties and the likelihood of the repetition of the violence.

6. Placing his hand on his wife's shoulder and requesting her to leave the room is not an act of extreme cruelty by the husband.

Appeal from the Circuit Court for Volusia county.

The facts of the case are stated in the opinion.

*Walter R. Yates* for Appellant.

*John A. Henderson* and *T. L. Clarke* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

Caroline E. Donald filed her bill in the Circuit Court of

Volusia county against her husband, Samuel A. Donald, praying therein for a decree annulling the bonds of matrimony between herself and said Samuel A. Donald. The bill alleges that complainant, she being at the time the widow of one Ryden, intermarried with the defendant on the 16th of April, 1882, in the County of Orange, State of Florida; that at the time of her marriage with defendant, she had one young child, the issue of her marriage with her first husband; that she continued to cohabit with defendant until the 28th day of July, 1883; that soon after her marriage with the defendant he began to treat her in a cruel and inhuman manner, which treatment he kept up until she was driven from home; that shortly after her marriage her infant child, a year and a half old, by her former husband, was taken sick, and the defendant, when called upon to assist in caring for it, threatened to whip it, and that when complainant remonstrated he threatened to whip her, which threat he often repeated; that on the 9th day of June, 1883, defendant whipped his daughter by a former marriage, and that when complainant remonstrated with him, he, in a passion, struck her on the shoulder and knocked her out of the room through a door; that on the 25th of June, 1883, the defendant came home, bringing with him a negro deputy sheriff, who served her with a summons to appear and answer to a suit for a divorce brought by defendant against her; that she left home the next day, and staid with her brother three weeks, at the end of which time she returned home, her husband having in the meantime dismissed his suit for divorce; that on the 24th of July, 1883, he informed her that they must separate; that as they were then living one of them might die, and the other would be accused of poisoning the dead one; that she again left the house of defendant and went to Sanford, where she learned that defendant had written

her brother and all the merchants of Sanford, and also pub-lished in the Enterprise newspaper, a notice not to credit the complainant on his account, as she had left her home without cause; that she returned again to Enterprise and met her husband, who told her that the house was locked, and that she should not go in it; "that she had been insulted, disgraced and cruelly treated in very many instances by the defendant" herein; "that he has told her that a negro was as good as she, and insisted on her addressing her servants as Mr. and Mrs.; that he would whip her as he chose and whenever it gratified him; that he never gave her a single dollar all her married life; that all the money she had she earned by taking in sewing, though the defendant is a man of large means and well able to support his family in luxury;" that during the latter part of their married life the defendant's temper was habitually violent and ungovernable. Whereupon she filed her bill for divorce.

There was a demurrer to the bill by defendant on the ground that the bill did not set forth any ground for a divorce, which demurrer the court overruled. We think the demurrer should have been overruled. There seems to be much confusion in the adjudged cases as to what degree cruelty must reach to be properly termed extreme cruelty, and also whether the cruelty to the wife must be produced by bodily or mental suffering.

Mr. Bishop says that the term "extreme cruelty," and other similar expressions to be found in the statutes of most of the States, are to be interpreted to mean simply and only the cruelty which was ground for divorce from bed and board in England. Bishop on Marriage and Divorce, vol. 1, sec. 718.

In arriving at a conclusion as to what cruelty can be properly designated as extreme, the surrounding circum-

stances of the parties should be carefully considered. The courts should look to the mental and physical condition of the person upon whom violence is inflicted. An act which would be lightly regarded by a woman of firm and vigorous mind and person, whose susceptibility to insult and ill treatment was dull and obtuse, might be an act of extreme cruelty to a woman in poor health and of acute sensibilities. They should also in case of a single act of violence, exceptional in its nature and its repetition extremely improbable, where the parties had before lived quietly and peacefully, and there was no just reason to fear danger to the woman by a continuance of the cohabitation, use the greatest caution and discrimination. They should consider, too, whether the act was caused or provoked by the wife and the degree of provocation, whether little or great, or whether it was wholly unprovoked. In the latter case a small amount of violence without cause has been considered to be under the peculiar circumstances sufficient to justify the court in saying the woman was not safe. French vs. French, 4 Mass., 587.

The better opinion, and one more consonant with humanity and justice, is that the cruelty to the wife need not necessarily be a bodily infliction.

Personal violence is not the only method of treating her with extreme cruelty. To an educated, delicately nurtured, and fragile woman, the imagination can easily supply kinds of treatment which would equal, if not exceed, the cruelty of a blow. Grossly and repeatedly charging her with want of virtue; abuse and mistreatment of near relatives whom she reverenced; a denial to her of the means of making a decent appearance in the society to which she was accustomed; continuous coldness of manner toward her; the forcing upon her of low and vulgar associates; these and the innumerable annoyances which malicious ingenuity can

inflict, to the kind of woman supposed would, in their damaging effect on her health and happiness, far exceed the effect of a blow. Whispel vs. Whispel, 4 Barbour, 217; Harratt vs. Harratt, 7 N. H., 196; Saunders vs. Saunders, 10 Jurist, 143.

It would seem also that a divorce for cruelty is not given by the courts as a punishment for a past act, but because an act of violence would engender in the mind of its victim such a constant fear of its repetition and growth in reality as would make her life an unbearable burden, and to furnish her protection and security for the future by depriving her husband of his power of control over her. Bishop on Marriage and Divorce, sec. 719. "It is for safety in the future, and not for retribution in the past."

Considering the statements in the bill and taking them as true, as we are bound to do, but for the purpose only of determining whether they set forth substantially a case entitling the complainant to relief, we think the bill is sufficient, and that the demurrer should have been overruled. It alleges continuous inhuman and ill treatment, commencing shortly after marriage, which culminated in a blow; that the defendant threatened to whip the child of complainant by a former marriage, only a year and a half old, when it was sick, and that he locked his house and refused her permission to come into his house, and turned her away without making any provision for her support; that during the "latter part of their married life his temper was habitually violent and ungovernable."

The statement in the bill as to the bad temper of defendant was defective as a cause for divorce of itself because too indefinite as to length of time to meet the requirements of the statute, it only saying, "in the latter part of their married life;" or of the rule laid down in Crawford vs. Crawford, 17 Fla., 180, as to statement of facts; but the

statement, together with the other acts charged in the bill, may be properly taken into our consideration under the rule laid down in the 10th Jurist, 143, in case of Saunders vs. Saunders, " that facts not amounting to actual cruelty were admissible as laying a foundation for subsequent cruelty," and showing the true relation between the parties and the likelihood of the repetition of the violence. See 4 Barbour, 217 ; Whispel vs. Whispel.

If these statements in the bill were true the woman was not safe in continuing to cohabit with the defendant, and the bill makes out a substantial case of extreme cruelty to a wife of ordinary womanly instincts. What we have said applies exclusively to the consideration of the bill as demurred to, and which admits the truth of its statements.

The next assignment of error is that the proof did not support the allegations of the bill. The only thing we can find in the record and evidence to support the allegation of cruelty is the admission of the defendant, that he put his hand on her shoulder and requested her to leave the room. There is no proof of his bad temper; of his threatening to whip her child, or of any material allegation in her bill, except that he refused to permit her to return home, saying that he had told her if she left she should not return. We cannot come to the conclusion that where the only fact proven, or admitted by the defendant, is that he put his hand on her shoulder and requested her to leave the room, and not to interfere between him and his daughter, was extreme cruelty as contemplated by the statute. Bishop on Marriage and Divorce, sec. 740, quoting Chancellor Kent, and Pothier. The court erred in granting a divorce to complainant on such evidence.

The defendant filed a cross-bill, to which no objection could be urged for being overly decent, or for not setting up sufficient grounds for a divorce. The complainant de-

nied the truth of the bill. There was an utter want of proof of his charges, and it would seem that if there was any truth in them they were of such a nature as to be susceptible of easy proof. We are led to doubt in considering the gravity of the charges against the character of the complainant, and his failure to introduce any evidence tending in the remotest degree to prove them, his good faith in making them.

The decree of the chancellor is reversed, and the bill of complaint is dismissed, as is also the cross-bill of defendant; and it is ordered further that the defendant pay all the costs of this suit, both in the Circuit Court and in this court.