BERRY WETHERINGTON, *Appellant*, v. MARY A. WETHERINGTON, *Appellee*.

1. "Extreme cruelty by defendant to complainant," which constitutes one of the grounds for divorce under Section 1928 of the General Statutes of 1906, and which may be sufficient to warrant a court in granting a divorce, not only refers to and means physical or bodily injuries, but includes as well such conduct of husband or wife as would cause the other continuous and intense mental suffering and danger to health. What conduct will reach the requirements of the rule must necessarily depend upon the facts and circumstances of each case.

2. Where a husband falsely accuses his wife with want of virtue, having sexual intercourse with another man from whom she had contracted a loathsome venereal disease and persists in making such false accusation, it may constitute such extreme cruelty as to be sufficient ground for divorce.

3. Where the evidence is sufficient to warrant a decree of divorce and the awarding of alimony to the wife, an appellate court will not disturb such decree because of conflicts in the evidence.

This case was decided by Division A.

Appeal from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*Macfarlane & Davis,* for Appellant;

No appearance for the Appellee.

SHACKLEFORD, J.—This is a suit for divorce and alimony instituted by the appellee as complainant against the appellant as defendant. The amended bill, omitting the formal parts, is as follows:

"Mary A. V. Wetherington, of Hillsborough County, State of Florida, the complainant, by leave of this court heretofore had and obtained, files this, her amended bill of complaint, against the defendant Berry Wetherington, of the same place and thereupon your oratrix complains and says: That she is a resident of the said county of Hillsborough and State of Florida, and has been such for more than two years past, as has also been the defendant Berry Wetherington. That during the month of January, A. D. 1895, your oratrix and the defendant were married to each other in said county and State, and have resided therein ever since their said marriage. That by said marriage they have five children, to-wit: Beula Wetherington, a girl of the age of ten years, Grace Wetherington, a girl of the age of eight years, Willard Wetherington, a boy of the age of five years, and Isben Wetherington, a boy of the age of three, and an unnamed baby boy, who, since the filing of the original bill in this case, has departed this life.

Your oratrix further represents unto your honor that during her entire married life to the defendant she has been to him a true, dutiful, affectionate and industrious wife, and has, in every way that lay in her power, contributed to his happiness and contentment and has made his home a cheerful and pleasant abiding place; that she has never in any manner whatever given him any cause to be dissatisfied with her or in any way to be unhappy

in his married life; that she has been industrious and frugal, and has done everything in her power to contribute to his material welfare in life. That, notwithstanding these facts, as set forth by your oratrix on oath, the defendant has, without just cause or excuse, during the last several months of their married life grown excessively jealous of your oratrix, or pretended to be so, and has thereby rendered her life extremely miserable. That on the 21st day of July, 1907, at which time the marital relations between your oratrix and the defendant ceased, this conduct, set forth by the defendant, culminated in the defendant coming to your oratrix and directly charging and accusing her with having contracted a loathsome venereal disease, and without the slightest proof of this being true, declared to your oratrix that she had so contracted this disease from one William Mack Terell from your oratrix having had sexual intercourse with the said Terrell, all of which said charges were totally untrue and without the slightest foundation whatever. That the said William Mack Terell with whom your oratrix was thus falsely accused with having had intercourse, has been for years in the employ of the defendant, and worked on the place where your oratrix and the defendant resided as a laboring man. That so uncalled for was this charge, so absolutely untrue in every way whatever, and so well known to the defendant to be untrue, and without the slightest foundation whatever, and done only for the express purpose of humiliating your oratrix; that your oratrix being a virtuous woman, and having at all times been true to her marriage vows, and having never known either the said William Mack Terell, or any other man in this capacity, save and except her husband, that your oratrix was so inflamed by this uncalled for charge on the part of her husband, that she then and there stated

to him that she would separate herself from him, and leave him forever.

And your oratrix further represents unto your honor, that the cruelty of this unjust charge to your oratrix, a delicate and virtuous woman, was far greater to her than any physical cruelty which the defendant would have possibly inflicted on her. That your oratrix is a sickly and weak woman, having suffered from a disease known as Woman's Disease, brought on her from the birth of her first child and from which she has suffered ever since, has been, and is now an extremely nervous and sick woman, all of which condition has been brought upon your oratrix in bearing children to the defendant, which he well knew, and that for the defendant, under these circumstances to then subject your oratrix to the terrible and gross insult and cruelty of such a charge as he made, was so terrible, and such an extreme of cruelty that your oratrix in her then nervous condition was for days sick and intensely miserable from the same. That these charges thus made against your oratrix by the defendant, has not only seriously affected the mind of your oratrix, but has resulted in great bodily injury to her in the wrecking and shattering of her nervous system, and that the same did then and does now constitute to your oratrix the most extreme cruelty that the defendant could possibly inflict upon her. That your oratrix then and there told the defendant that he knew his charges were untrue and without the slightest evidence in the world upon which to base the same, and that she would then and there separate herself from him and leave his home and no longer live with him as his wife, all of which your oratrix then and there proceeded to do. That the defendant told your oratrix that if she left him, he would turn over to her the care and custody of all their five children, whom he realized needed the care and attention of

a mother, and that in order to enable her to support said children, he would give her one-half of all the property he then had. That your oratrix on leaving the said defendant, went to the home of her brother in the said neighborhood where the defendant then and now resides, and took with her all of the children above named, but that since that time, the said defendant has taken back to his own place, and without the consent of your oratrix, all of said children, who are now living, and now refuses to give them to your oratrix, as he agreed at the time of their separation, as he also refuses to provide for your oratrix in any manner whatever or to give her any of his property on which to live and support herself.

Your oratrix further represents unto your honor that on the day following the separation of your oratrix from the defendant, the brother of your oratrix, with whom your oratrix was then living, went to see the defendant concerning the trouble between your oratrix and the defendant; that the defendant then and there, as your oratrix is informed and believes, and so avers to be true, again charged your oratrix with infidelity to her marriage vows, and with having committed the crime of adultery with the said William Mack Terrell, and although he failed and refused to disclose to your oratrix's said brother the evidence of which he based this terrible charge against your oratrix, reiterated to him his belief that said charges were true. That on the 24th day of July, 1907, and three days following the separation of your oratrix from the defendant, the defendant wrote to your oratrix, and again intimated that your oratrix had the same loathsome disease he had previously charged your oratrix with having, and in said note so written to your oratrix, particularly charged the same to be true, and demanded that your oratrix should submit herself to the examination of their family physician in order to as-

certain if the same was true, and in said  note declared that unless your oratrix did so, he would have the same done himself.   That although your oratrix realized·that the defendant had no such power as he claimed, of forcing her to submit to such an examination, yet being desirous that her good name should be cleared of all imputation of such a charge, she immediately went to the office of Dr. H. J. Hampton, in the city of Tampa, Florida, the family physician of your oratrix and the defendant's family; that she there met the defendant who was present during the entire examination, and at his request, made as above, submitted herself to a physical examination by said physician; that said physician after so examining your oratrix, declared, and then and there certified that your oratrix was not suffering from any loathsome or venereal disease, or ever had been in such condition.

Your oratrix further represents unto your honor that after leaving the office of said physician, the brother of your oratrix, at the request of your oratrix, interviewed the defendant in the presence of your oratrix, and then and there asked him if he was satisfied, and was willing to return and live with your oratrix.

That the said defendant in the presence of your oratrix and speaking to her brother, declared that he .was not satisfied, did not retract any of the charges he had previously made, although the examination  had been made at his request, and declared that he would never return to your oratrix, nor permit her to return to him, and would never again live with her.   That he then and there strongly intimated his persistent belief in the impurity of your oratrix and that she still suffered from the disease which he claimed she had  contracted from the said William Mack Terrell.   That since that date, as your oratrix is informed, believes and avers to be true, he has time and again stated  to divers different persons  that

your oratrix was a diseased woman, and that he would never live with her again, and  that she was guilty of adultery with the said Terrell as hereinbefore charged.

Your oratrix further represents unto your honor that the said defendant has totally failed to carry out any of his promises made to her at the time of her separation; that he has taken from her all of the children now living; that he has refused to provide for your oratrix in any manner whatever beyond the paltry sum of twenty dollars, although, as a matter of fact he is a man of good circumstances, and well to do in this world's goods; that he owns in his own right, about seventy head of stock cattle, worth at least seven hundred dollars; that he has four head of horses, worth four hundred dollars; that he has household furniture and farming utensils worth two hundred dollars; that he has  between five and six hundred dolllars in cash or in bank and in addition to the above he has four hundred acres of good land in Hillsborough County, Florida, whereon he  now lives; for which he has been offered the sum of ten thousand dollars; that on said land he has an orange grove of about five hundred bearing trees bringing in an income of five or six hundred dolllars a year, but notwithstanding his financial condition he has thrown your oratrix upon the mercy of the world without anything whatever to live upon; that your oratrix absolutely has no means of support and that in her frail and weak condition is absolutely unable to make a living; that the said defendant by his cruel conduct, as above set forth, has driven your oratrix away from her home, separated  her from the children, all of whom need her care and attention, and has absolutely forced her upon the charity of the world and her relatives for support.

The premises  considered, your oratrix  respectfully prays your honor to grant to your oratrix a decree of this

honorable court, forever annulling the bonds of matri-
mony heretofore existing between your oratrix and the
defendant and granting your oratrix a decree of absolute
divorce of and from the said defendant, and may it please
your honor in said decree of divorce, to be so granted to
your oratrix as aforesaid, to grant  to your oratrix the
entire care, custody and control of all of said children
now living, born of said marriage, to-wit:   Beula, Grace,
Willard and Isben Wetherington; and that the defendant
be denied the care, custody and control of said children
and each of them; and may it please your honor, in said
decree of divorce to grant to your oratrix a further de-
cree and judgment of this court, giving to your oratrix
one-half of all of the above and foregoing real and per-
sonal property belonging to said defendant as and for a
means of support and alimony for your oratrix and her
said children, or give to your oratrix such portions there-
of as your honor shall deem meet and proper under all
the circumstances of this case, and make in said decree
such provisions for the support  of your oratrix as and
for alimony as your honor shall deem it to be equitable
and just; and may it please your honor to grant to your
oratrix in said decree of divorce such counsel fees, for
the bringing  and prosecuting  of this suit, as to this
court shall seem meet and proper in the premises.    And
may it please your honor to grant to your oratrix such
temporary alimony as shall be necessary to support your
oratrix during the pending of this  suit and such tem-
porary counsel fees as may be necessary to compensate
the solicitor of your orator in maintaining of this suit
pending the same.    And may it please your  honor to
grant to your oratrix such other and further relief in the
premises as your honor may deem meet  and to equity
shall appertain."

The defendant filed an answer in which he contro-

verted the material allegations of the bill and also incor-
porated a demurrer therein.   The cause was referred to
a special master to take the   testimony therein, before
whom a large number of witnesses were examined by the
respective parties, his report covering nearly one hundred
typewritten pages.   At the hearing the following final
decree was rendered:

"The above styled cause coming   on this day to be
heard by me, upon bill and answer and testimony taken
by a master in the said cause, and   after argument of
counsel, both of the complainant and the defendant, it is
in consideration   thereof hereupon Ordered, Adjudged
and Decreed

1st.   The court finds that the complainant Mary A.
V. Wetherington, has fully maintained the issues on her
part in said bill of complaint   contained, and   that the
equities of said cause are with the said complainant, Mary
A. V. Wetherington. ·

It Is Therefore   Ordered, Adjudged   and Decreed
that the said Mary A. V. Wetherington   be and she is
hereby granted the relief by her prayed in   said bill of
complaint, and that the bonds of matrimony heretofore
and now existing between the complainant Mary A. V.
Wetherington, and the defendant Berry Wetherington,
be and the same are hereby forever dissolved, and that
the said complainant be granted a decree of divorce of
and from the defendant a vinculo matrimonii.       ·

2nd.   It Is Therefore Ordered Adjudged   and De-
creed that the said complainant, Mary A. V. Wethering-
ton, be given and do have the guardianship, custody and
control of the youngest of the children of said marriage,
to-wit:   Isben Wetherington, until the further order of
this court, and that   the said Berry Wetherington, do
have the guardianship and control of the other three chil-
dren   of said   marriage, to-wit:   Beula Wetherington,

Grace Wetherington, and Willard Wetherington, until the further order of this court; but that each of the parties hereto, both complainant and defendant, shall have the right at all reasonable times to visit the child or children of said marriage in the hands of the other party to this suit.

3rd.    It Is Further Ordered, Adjudged and Decreed that the said defendant, Berry Wetherington, do pay to the said complainant, Mary A. V. Wetherington, and that the said complainant, Mary A. V. Wetherington have and recover of and from the defendant, Berry Wetherington, the sum of fifty dollars per month, permanent alimony, to be paid to her by said defendant, Berry Wetherington, on the first day of each and every month hereafter during the natural life of her, the said Mary A. V. Wetherington, and that said alimony so ordered by this court is, and shall become a lien on all of the real estate owned by the said defendant, Berry Wetherington, at the time of this decree or hereafter acquired by him, and that in default of the prompt payment of said monthly alimony by the said defendant, that the said Mary A. V. Wetherington be entitled in addition to other remedy prescribed by chancery courts, to the remedy of a execution to be issued out of the office of the Clerk of the Circuit Court for Hillsborough County, in the same manner as other executions are now issued upon judgments of law and equity.

4th.    It is Further Ordered, Adjudged and Decreed that the defendant, Berry Wetherington do pay all the costs of this proceeding, including the sum of one hundred and fifty dollars counsel fees, to Thomas Palmer, Counsel for the Complainant in this suit, and that the same shall be paid in addition to the temporary counsel fees heretofore in this cause; and that in default of the

same by said defendant, that execution issue for the same.

5th. It Is Further Ordered Adjudged and Decreed that the defendant, Berry Wetherington do pay to the said complainant, Mary A. V. Wetherington and that she do have and recover of him the sum of one hundred and sixty-eight dollars, the same being the amount heretofore ordered by this court to be paid to her by him, and which the court now finds to be in arrears and not paid as heretofore required; and that in default of payment of the same by said defendant, that execution issue for the same.

Done and ordered at Chambers in the City of Tampa, Hillsborough County, Florida, on this the 7th day of December, A. D. 1908.

From this decree the defendant has entered his appeal to this court, assigning two errors:

"1st: The court erred under the testimony in said case in decreeing a divorce between the parties.

2nd. The court erred under the testimony in said case in decreeing the amount of alimony named in the decree and the same was excessive."

We decline to set out the testimony for the reason that portions of it are revolting and shocking to a degree. We shall not even attempt to give a synopsis thereof. In the discharge of our judicial duty, we have felt impelled to read it all and to give the same our careful consideration, but no useful purpose could be accomplished by requiring the readers of this opinion to take such a nauseous dose. As is often found in cases of this nature, there is much conflict in the testimony, but we have no hesitancy in saying that upon all material points, we are of the opinion that the allegations in the bill have been fully sustained and we heartily concur in the conclusion reached and announced by the chancellor. We

fully approve of the policy so frequently enunciated by this court concerning suits for divorce and have no intention of departing therefrom.    See Hancock v. Hancock, 55, Fla. 680, 45 South. Rep. 1020, S. C. 15 L. R. A. (N. S.) 670, wherein prior decisions of this court are referred to and cited, and Prall v. Prall, 56 Fla. \521, 47 South. Rep. 916.   Nothing said in any of these cases is in conflict with or mititates against the conclusion announced herein.   We would refer especially to Donald v. Donald, 21 Fla. 571, wherein it was held that "Extreme Cruelty" sufficient to authorize a court  to grant a divorce does not necessarily mean a bodily injury alone, but includes such conduct on the part of the husband as would cause to the wife continuous and intense mental suffering and danger to her health."   As was also said therein on page 574, "the better opinion, and one more consonant with humanity and justice, is that the cruelty to the wife need not necessarily be a bodily infliction.

Personal violence is not the only method of treating her with extreme cruelty.   To an educated, delicately nurtured, and fragile woman, the imagination can easily supply kinds of treatment which would equal, if not exceed the cruelty of a blow.   Grossly and repeatedly charging her with want of virtue; abuse and mistreatment of near relatives whom she reverenced; a denial to her of the means of making a decent appearance in the society to which she was accustomed; continuous coldness of manner toward her; the forcing upon her of low and vulgar associates; these and the innumerable annoyances which malicious ingenuity can inflict, to the kind of woman supposed would, in their damaging effect on her health and happiness, far exceed the effect of a blow."

Also see Williams v. Williams, 23 Fla. 324, 2 South. Rep. 768. and Palmer v. Palmer, 26 Fla. 215, 7 South. Rep. 864.   We can conceive of no act of cruelty calcu-

lated to more deeply wound the feelings of a woman of tender, delicate sensibilities, who has conducted herself toward her husband as a true and chaste wife, than to have him make such false and unfounded accusations against her as are set forth in the bill of complaint in the instant case. They are revolting to the sense of common decency and shocking to the impulses of humanity. The far reaching consequences of such aggravated charges would be difficult if not impossible to estimate. If such brutal and inhuman conduct on the part of a husband towards his wife would not constitute extreme cruelty, such as would damage health and render cohabitation intolerable, we can imagine nothing short of actual bodily violence which would do so. We would refer with approval to McMahan v. McMahan, 9 Or. 525, which will be found to have a strong resemblance to the instant case. We quote the following language found on page 526: "Now the complainant in this case does allege, in direct terms, that the defendant charged the complainant not only with familiarity with gentlemen of her acquaintance, but with unchastity — — — with infidelity to her marriage vows — — — and, by reason thereof, with being afflicted with a loathsome venereal disease, which the complainant had communicated to him, and which fact he had repeated to their neighbors, to her great shame and scandal. Certainly no more cruel nor brutal method could have been selected to wound the feelings of a chaste wife, and cause her the most poignant grief, than accusation thus made by her husband. For they involved not only the charge of adultery, but of that vile and miscellaneous sort which bore him the twin fruits of dishonor and disease. And if these accusations were false, as alleged to be — — — if his wife had kept a stainless purity of life, and a true faith to her marriage vows — — — then the uttering of such false and slanderous accusations against

her fair name and fame, was cruel treatment which furnished her a just ground for the dissolution of the marriage tie, and the court below did not err in granting her prayer for a divorce."

Also see 14 Cyc. 606 and authorities cited in note 18, and 1 Nelson on Divorce and Separation, Sec. 277 and authorities cited in notes, especially Black v. Black, 30 N. J. Eqr. 215, text 221. However, it is a work of supererogation to cite authorities in support of the conclusion which we have reached.

The second assignment is but lightly insisted upon before us. We content ourselves with saying that the defendant's own testimony shows that he has property to the value of at least $5,000.00, while there is other testimony to the effect the value of such property is $10,000.00 or more.

Neither assignment has been sustained, therefore the decree must be affirmed.

WHITFIELD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.