HAROLD R. CURRIE v. RUTH CURRIE.

162 So. 152.
Division A.
Opinion Filed June 4, 1935.

*W. H. Hollman,* for Appellant;
*Charles E. Jones,* for Appellee.

DAVIS, J.—This bizarre controversy originated in a marriage of expediency that ultimately resulted in the wife's suit for divorce, a decree in her favor and the award of ali-

mony and attorney's fees to which the husband, by this appeal, objects.

The bill of complaint alleges in substance that complainant is now and has been for the past two years a *bona fide* resident of the State of Florida, and has lived near Avon Park; the complainant and defendant were married in Wauchula, Florida, December 22, 1927; that they lived together until October 18, 1933, but did not cohabit; that no children were born of said marriage; that she conducted herself as a true, chaste and dutiful wife, doing everything to make his life comfortable and happy; that defendant has treated complainant with extreme cruelty, contrary to the marriage vows; that on only two occasions since they have been married have they occupied the same bed, and on neither occasion did any sexual relationship transpire; that though complainant has made affectionate advances toward defendant, all such advances have been repulsed because defendant has said he didn't care for complainant in that way, and that defendant has always refused to have sexual relations with complainant; that complainant was a normal, healthy woman, but as a result of this treatment her health was so impaired she had to see a physician, and was forced to leave her place of abode.

The substance of the evidence is to the effect that complainant's brother and defendant went into a joint venture in the orange grove business, building a small house in which they could live. The venture failed and the brother went back north, leaving complainant and defendant living together in the same house. In order to avoid scandal and because he thought she would make him a good wife, defendant married complainant in Wauchula, December 22, 1927.

Two weeks after they were married, she procured a job

as waitress at Kenilworth Lodge in Sebring at $20.00 per month plus tips. Defendant then obtained a job as real estate agent for a firm in Brighton, about 30 miles south of Sebring, on a commission basis plus $10.00 per month and actual expenses. Complainant sent defendant from $2.00 to $3.00 per week on which to live, in addition to food. When the job at Kenilworth Lodge expired in April, 1928, complainant went to Brighton to live with defendant and remained there for a year and a half.

There was a pre-nuptial agreement between the parties that the marriage relation would not include coitus until a future date when the wife's health would permit, the wife feeling that she was unable to stand pregnancy at the time of her marriage, due to the fact that she had been out of the hospital only a short time. Complainant, however, was fully capable of intercourse at that time. Accordingly, no acts of intercourse were had between the parties. Within about one year according to defendant's testimony and within five months according to complainant's testimony, complainant signified her intention of willingness to begin acts of intercourse; but all her advances were accepted without response on defendant's part, defendant stating that he did not care for her in that way.

Defendant testified that his refusal to have intercourse was because his wife had nagged him until he had lost all love for her. Only twice during their married life did they occupy the same bed, and on neither occasion did intercourse take place. This continuous abstinence, so plaintiff averred, caused her to become very nervous and had begun to affect her health detrimentally by causing excessive hemorrhages at periods, beginning a little while before she removed to St. Petersburg.

One day in searching through her husband's trunk for

old Christmas cards, complainant found several loose pages under a binding purporting to be the diary of her husband, carefully wrapped in an old newspaper, in which the statement was made that he had no desire or feeling for the opposite sex; but that he had delight in becoming intimate with those of his own sex, especially young men and boys.

These things so unnerved the wife that her health was becoming impaired, when she removed to St. Petersburg on October 18, 1933.

On April 13, 1934, the court awarded $25.00 per month as temporary alimony and allowed $50.00 as counsel fees to complainant. Then on July 25, 1934, the court in granting a divorce to the complainant awarded $15.00 per month as permanent alimony, and $25.00 as permanent attorney fees—it having been shown that the husband worked on wages of $75.00 per month and out of which he was required to keep up his truck as custodian of the city park at Avon Park and pay his living expenses.

Since the Chancellor granted the wife a divorce on the evidence adduced before him in her behalf in support of the charge of extreme cruelty charged and relied on as a ground for relief, we accept the final decree as being in legal effect a finding on the facts in favor of the complainant's wife, which finding this Court will not disturb in the absence of a showing that the Chancellor's conclusions on the facts are clearly wrong. No such showing has been made to appear in the present case. See Wetherington v. Wetherington, 57 Fla. 551, 49 Sou. Rep. 549.

But as a matter of law we must necessarily consider the proposition; assuming that the evidence adduced in complainant's behalf is true, does such evidence, and the reasonable inferences to be drawn therefrom, make out in a

case of extreme cruelty within the intent of our divorce statute—Section 4983 C. G. L., 3191 R. G. S. Paragraph 4?

Extreme cruelty as ground for divorce under our statute is by no means confined to physical violence. It includes, in addition to physical violence, such conduct on the part of either spouse as would produce in the other continuous, intense mental pain and suffering, danger to health, or *a forced abnegation of the marital relation.* If mental pain and suffering or physical violence is not of itself sufficient to show cause for divorce, either may supplement the other to show such cause. Donald v. Donald, 21 Fla. 571; Williams v. Williams, 23 Fla. 324, 2 Sou. Rep. 768; Palmer v. Palmer, 26 Fla. 215; 7 Sou. Rep. 864; Wetherington v. Wetherington, *supra;* Prall v. Prall, 58 Fla. 496, 50 Sou. Rep. 867, 26 L. R. A. (N. S.) 577; Hooker v. Hooker, 65 Fla. 53, 61 Sou. Rep. 121, 43 L. R .A. (N. S.) 964; Erdmans v. Erdmans, 90 Fla. 858, 107 Sou. Rep. 188; Kellog v. Kellog, 93 Fla. 261, 111 Sou. Rep. 637; Baker v. Baker, 94 Fla. 1001, 114 Sou. Rep. 661.

While it is not necessarily cruelty for either spouse to withhold from the other marital sex privileges, especially in the case of marriage *de convenienti* as this one was, yet a circumstance of this sort is to be considered in conjunction with all the other facts, and the conclusion reached. upon what appears to be cumulative force and effect of the attitude and course of conduct of the one party with relation to its effect upon the health, happiness and mental and physical well being of the opposite party who makes complaint.

The evidence in the case now before us makes out more than a mere instance of a husband's refusal to have sexual intercourse with his wife as argued by the appellant, who seeks reversal of the decree on the authority of Prall v. Prall, 58 Fla. 496, 50 Sou. Rep. 867, for legal insufficiency

of the proof to support the decree of divorce as a matter of law.

The facts as they appear in this case are that defendant refused for a period of about five years to have any sexual connection with his wife; that he once allowed her to lie in bed for two weeks before summoning any medical aid; that only three times during her married life did he give her money to buy clothes with; that in their impoverished condition, defendant took a boy to support, buying him things that were unnecessary in their economic status; that defendant gave expression to unnatural love for the boy even before his wife's eyes, which in the light of information contained in the diary showed that defendant would never be able to gratify her desire for a real husband; these things when accompanied by worry and nervousness on the wife's part affecting her health and necessitating removal to another locality may constitute cause for divorce on the ground of extreme cruelty.

The case made out here is in some respects analogous to that disclosed in Hooker v. Hooker, 65 Fla. 53, 61 Sou. Rep. 121, 43 L. R. A. (N. S.) 964. See also 1 Bishop on Marriage, Divorce & Separation, 755, Sec. 1830. It cannot be said, therefore, that the facts found by the Chancellor to exist, are insufficient as a matter of law to support the divorce decree granted by him on the statutory ground of extreme cruelty, if we take into consideration the cumulative effect of the evidence as a whole.

While as Paul said to the Corinthians (1 Corinthians 7: 8-9), "It is better to marry than to burn," the contracting of a marriage of convenience in order to achieve a purpose other than that for which the connubial status was instituted and made an honorable estate in all civilized nations, is not different in its legal consequences from that of a

marriage brought about through the noblest impulses of mutual love and respect between the contracting parties. And when required to be dealt with in a court of justice, the dissolution of such a marriage must be visited with the same consequences that inevitably follow in the wake of a breach of post nuptial disregard for the marital rights and duties on the part of one of the spouses toward the other.

But the amount allowed as alimony upon dissolution of a marriage admittedly contracted as a marriage of convenience in the first instance, where no special equities between the parties appear to require a different rule to be applied, should be little, if any more, than nominal in character, since the rule that litigants must come into equity with clean hands, is as much applicable to a complainant wife who prays alimony, as well as divorce, from a voluntarily discarded husband *ab convenienti,* as it is to equity suitors seeking special relief in other classes of cases. So the decree will be affirmed, but without prejudice to the right of appellant to seek a reduction in the amount of alimony allowed.

Affirmed.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.