Edward P. Walstrom v. Nora Walstrom.

168 So. 532.
Division B.
Opinion Filed May 27, 1936.

*J. T. McBrayer,* for Appellant;

*H. S. Glazier,* for Appellee.

Buford, J.—The appeal in this case brings for review final decree of divorce granted a wife on the ground of extreme cruelty by the husband to the wife. The main question presented for our consideration as stated by the appellant is:

"Does a husband treat his wife with extreme cruelty entitling her to a divorce under the Florida Law when he goes out to places of amusement with another woman, pays her grocery bills, light bills, remains at her home frequently evenings until late, and Sundays, fails to take his wife any place, but all his conduct with the other woman falling short of adultery and he does not abuse or otherwise mistreat his wife?"

The appellant states other questions, but we do not consider them material in the light of the disposition which will be made of the first question.

The bill was filed on the 17th day of April, 1934. The particular cruelty complained of was alleged in substance

as follows: that since January, 1933, the defendant has been infatuated with another woman by the name of Pearl Stevens, and became in love with Pearl Stevens and thereupon neglected his wife; that the complainant and defendant were living together at 2521 Maryland Avenue in Tampa and that the said Pearl Stevens moved into the neighborborhood about three blocks from the home of the Walstroms and that thereafter the defendant stayed at home very little but has stayed at the home of Pearl Stevens a great deal of the time; that his association with Pearl Stevens has been open and notorious; that he has flaunted this woman in the face· of his wife, has told his wife that the home of Mrs. Stevens was more like home to him than anywhere else; that he has neglected his wife and paid a great deal of attention to the other woman in the neighborhood; that the defendant in January, 1933, reached the conclusion "that he would rather cohabit with the said Pearl Stevens, and would rather be at the home of the said Pearl Stevens than to be at the home of your oratrix, and the defendant did this, knowing that it was cruel to his wife, and knowing that the wife objected to such conduct, right before her eyes and in the face of her good neighbors, and before the faces of her son and three daughters, which was cruelty to your oratrix, and this fear, anguish, pain, and suffering has endangered the health of your oratrix more than if her husband had struck her, and has caused her to worry and suffer for the past year and she is now sick from the effects of his cruel treatment, abuse and neglect. Your oratrix further charges that the said Pearl Stevens is not a lady, not a good woman, but she is a lewd woman, and her conduct proves this, also the defendant knows that the said Pearl Stevens is not a good, virtuous woman, and the defendant knows that he has slept with

the said Pearl Stevens, and knows that he has spent the night at the home of said Pearl Stevens many times since the first day of October, 1933, and this was almost in sight of the home of your oratrix, and in January, 1934, the defendant did, knowing what kind of a woman the said Pearl Stevens was, and knowing at the time that your oratrix objected—that he, the defendant did, in January, 1934, introduce and bring in, and invite in, and cause her to come into the home of your oratrix, there, ostensibly, for the purpose of nursing or waiting on the defendant, who, at that time, claimed to be sick and who in fact was sick, and on one of these occasions in January, 1934, when the said Pearl Stevens was at the home of your oratrix called her, Pearl Stevens, a whore, and then and there objected to her company there at and in her home, and this made the defendant angry, so he cursed and abused your oratrix, and told her, your oratrix, that he would go and live at the home of the said Pearl Stevens. Your oratrix says that in October, 1933, for about three weeks when your oratrix was away from home nursing one of her daughters, that the defendant was at the home of said Pearl Stevens every night, and this was cruel to your oratrix and caused her mental pain and her health has been impaired."

There are more of the same sort of allegations which are made entirely too verbose but which when condensed mean that the defendant both night and day kept company with a woman of bad reputation in the community in which the defendant and complainant lived with their children and that he made no secret of his association with the other woman; that he spent the night at her home; that he went about with her from place to place, taking her riding in the night and to shows and, in fact, treating her very much in the same manner that he should have treated his wife,

and all the time paying little or no attention to his wife. It is also alleged that your oratrix further complains and says that she is not well; that her health is not good on account of the treatment that she has received at the hands of the defendant for the past year.

There is substantial evidence in the record to support all the allegations of the bill of complaint except those which charge adultery and while the charge of adultery has not been definitely proven, the proof of association between the defendant and Mrs. Stevens was such that hardly any other reasonable conclusion except they were indulging in such conduct may be drawn.

In the case of Donald v. Donald, 21 Fla. 571, this Court held that extreme cruelty sufficient to authorize a court to grant a divorce does not necessarily mean bodily injury alone, but includes such conduct on the part of the husband as would cause the wife continuous mental suffering and would be dangerous to her health. Certainly the allegations of the bill of complaint and the evidence in this case meet that test.

In the case of Williams v. Williams, 23 Fla. 324, 2 So. 768, it was held that extreme cruelty as a cause for divorce may be mental as well as bodily injury. To like effect was the opinion in the case of Wetherington v. Wetherington, 57 Fla. 551, 49 So. 549; Prawl v. Prawl, 58 Fla. 496, 50 So. 867; Hooker v. Hooker, 65 Fla. 53, 61 So. 121; Erdmans v. Erdmans, 90 Fla. 858, 107 So. 188; and Nolen v. Nolen, 121 Fla. 130, 163 So. 401.

In the latter case we said:

"There is probably no greater cruelty which may be inflicted upon a self-respecting, peace-loving man than that which is inflicted by a contentious, unreasonable and nagging woman making his life unhappy, and well nigh unbearable,

by a continuous indulgence in faultfinding, nagging, threatening and false accusing her husband of improper and disgraceful conduct, arousing him from his sleep at all hours of the night only to engage in a brawling, quarreling and abusive language. Such conduct on the part of a wife is bound to cause her husband a constant worry, anguish and grief, and renders cohabitation intolerable and unsafe."

To paraphrase what we said in that case, we might say here that there is probably no greater cruelty which may be inflicted upon a self-respecting, home-loving, faithful and honorable woman who is a wife and a mother, than that which may be inflicted by the continuous, unrestrained, open and notorious, lover-like association between her husband and another woman in her immediate neighborhood whose conduct with him is such as to cause his wife and other observers to conclude that the relations between the husband and such other woman are immoral, disgraceful and insulting to the wife and mother of the children of such husband. Such conduct on the part of a husband can result in causing a wife possessing the natural characteristics of womanhood constant worry, anguish and grief and must render cohabitation between the wife and such husband intolerable and unsafe.

It has been said that Hell knows no fury like that of a woman scorned; and it might also be said that a wife knows no mental pain and anguish more intense that that which she suffers when she knows that the husband she loves and to whom she is faithful abandons and mistreats her for the lure of another woman to whom he gives his love, companionship and substance.

We find in the record ample substantial evidence to support the decree which should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.