## JOYNER *v.* JOYNER.

1. The husband and wife being domiciled in Georgia, the husband left the wife, acquired in good faith, after a lapse of five years, a domicile in Kansas, and obtained in that State, and in accordance with its laws, a judgment of divorce a vinculo, based on constructive, and not actual, service of process on the wife, who meanwhile remained domiciled in Georgia and never appeared in the action. *Held,* that the Kansas judgment was not entitled to obligatory enforcement in Georgia by virtue

of the Civil Code, §5237, which provides that records and judicial pro-
ceedings, properly authenticated, shall have such faith and credit given
them in every court within the United States as they have by law or
usage in the courts of the State from which they are taken.

2. It appearing that the grounds of the divorce, as found by the Kansas
court, were in accordance with recognized principles underlying the
marriage state, and that notice of the pendency of the suit was given
by publication, a copy of the same being sent by mail to the wife, who
had reasonable time to appear and defend, but failed to do so, and
allowed the husband to obtain a decree, upon the faith of which he
contracted a subsequent marriage, it is proper for our courts, on the
ground of comity, to recognize the validity of such divorce, it not appear-
ing that any imposition, fraud, or concealment was practiced by the
husband in procuring the decree.

3. Subsequently to the rendition of the Kansas decree of total divorce, the
wife instituted suit for alimony in Georgia, and obtained personal
service in this State on the husband, who pleaded and set up the
Kansas judgment. *Held*, that the wife's suit for alimony can not be
maintained, and a verdict in her favor must be set aside.

Argued November 21, 1907.—Decided July 27, 1908.

Temporary alimony. Before Judge Pendleton. Fulton supe-
rior court. May 15, 1907.

*Moore, Gordon & Branch,* for plaintiff in error.

*Francis L. Eyles,* contra.

BECK, J. Roselie Joyner, hereinafter called the wife, brought an
action for alimony against R. G. Joyner, hereinafter called the
husband, in the superior court of Fulton county. The husband
appeared and pleaded. The court rendered judgment in favor of
the plaintiff, and the husband excepted, one of the grounds of his
exceptions being that the judgment was without evidence to support
it, "because the evidence showed that defendant had been granted
a divorce from plaintiff by a court of competent jurisdiction, to
wit, the district court of Sedgwick county, Kansas, and that by
said judgment plaintiff's right to alimony was barred." The rec-
ord discloses the following facts: The parties were married in
Georgia in 1898, where they both resided at the time, and where
the wife continued to reside. In 1900 or 1901 the husband left
the wife at their home in Atlanta, Ga., ostensibly to go to Hot
Springs, Ark., for his health. He returned about a month later
and spent two days, leaving a second time and taking up his dom-
icil at Wichita, Kan. His wife was not permitted to accompany
him. In 1905 the husband procured a total divorce in the dis-

trict court of Sedgwick county, Kansas, the place of his domicil. The notice of the pendency of the divorce proceedings was by publication, a copy of the same being sent to the defendant by mail; but the wife did not appear in the action. Subsequently the husband married again, and returned to Atlanta, Ga., where he now resides. On the trial of the action for alimony, the husband pleaded the Kansas divorce. The court admitted an authenticated copy of the proceedings in evidence, but refused to recognize the same as a bar to the wife's right to alimony.

1. In the case of Haddock v. Haddock, 201 U. S. 562 (26 Sup. Ct. 525, 50 L. ed. 867), Mr. Justice White, after an exhaustive review of the authorities both State and Federal, announced the opinion of the majority of the court in the following language: "The husband and wife being domiciled in New York, the husband left the wife, acquired in good faith, after a lapse of years, a domicil in Connecticut, and obtained in that State, and in accordance with its laws, a judgment of divorce based on constructive, and not actual, service of process on the wife, who remained domiciled in New York, and never appeared in the action. The wife subsequently sued for divorce in New York and obtained personal service in that State on the husband, who pleaded the Connecticut judgment. *Held,* Without questioning the power of the State of Connecticut to enforce the decree within its own borders, and without intimating any doubt that the State of New York might give it such degree of efficacy that it might be entitled to in view of the public policy of the State, that the Connecticut decree, rendered as it was without being based on personal service of process on, and therefore without jurisdiction over the wife, was not entitled to obligatory enforcement in the State of New York by virtue of the full faith and credit clause of the Federal constitution." The facts in the Haddock case are very similar to those in the case at bar, and the opinion in that case disposes of the question as to whether the Kansas court, in virtue alone of the domicil of the husband in that State, had jurisdiction to render a decree against the wife which was entitled to be enforced against the wife in this State in and by virtue of the constitution and laws of the United States.

But it is contended by the plaintiff in error that section 5237 of the code of Georgia, which provides that records and judicial proceedings properly authenticated "shall have such faith and credit

given them in every court within the United States as they have by law or usage in the courts of the State from which they are taken," makes it obligatory upon the courts of this State, independently of any Federal law, to give the Kansas decree the same efficacy in Georgia that it has in Kansas. To this contention it is sufficient to reply that the code section is a literal copy of a Federal statute (U. S. Rev. Stat. §905, U. S. Comp. St. 1901, p. 677), and its inapplicability to a question like the one now under consideration was adjudicated in Haddock's case, supra. As was said by Mr. Justice McCay in *McCauley* v. *Hargroves, 48 Ga.* 50 (15 Am. R. 660), "This is not intended to exclude such defenses to the judgment as inquire into the jurisdiction of the court in which the judgment was given, or such as inquire into the right of the State itself to exercise authority over the person or subject-matter." In the present case, the Kansas decree was rendered without being based on personal service of process on the defendant, who did not appear in the action; and the court rendering the decree was, therefore, without jurisdiction over the person of the defendant. The only instance in which a judgment, entitled to obligatory enforcement in other States, can be obtained against a nonresident defendant, based upon constructive service of process, is where the proceeding is one in rem, and the res is within the jurisdiction of the court rendering the judgment. Woodruff *v.* Taylor, 20 Vt. 65. And, as was pointed out in Haddock's case, "A suit for divorce brought in a State other than the domicil of matrimony, against a wife who is still domiciled therein, is not a proceeding in rem justifying the court to enter a decree as to the res, or marriage relation, entitled to be enforced outside of the territorial jurisdiction of the court." See also Borden *v.* Fitch, 15 Johns. (N. Y.) 121 (8 Am. D. 225).

2. We come next to consider the question as to whether the Kansas decree should be given effect in Georgia, not because of the statute above referred to, but because of the comity between the States. The general rule governing the comity of nations is that in a proper case the laws and judicial proceedings of one State will be enforced in another State, provided they do not involve anything immoral, contrary to general policy, or violative of the conscience of the State called upon to give them effect. *Eubanks* v. *Banks, 34 Ga.* 407. In the case of *Cox* v. *Adams, 2 Ga.*

158, Nisbet, J., delivering the opinion, said, "The comity of nations can not be recognized as capricious—as depending upon arbitrary whims or tyrannic impulses. It has grown into a system whose sanctions are reason, religion, and the common interests of all, for the violation of which States are amenable to the public sentiment of the world. The rules admitted by civilized States upon this subject are founded not only in convenience, but in necessity; without them commerce could not exist between the States.

. . The whole system of agencies, purchases and sales, mutual credits, and transfers of negotiable instruments depends upon the jus gentium. In fact nothing so much distinguishes civilized from savage States as this comity of the nations." What is here said, as to the necessity of a wise and uniform system of comity between the States as regards trade and commerce, is equally applicable to the subject of marriage and divorce. Especially in the United States, where from our position as a confederation of independent sovereignties, contiguous, but each with its distinctive municipal law of divorce, the necessity for such a rule of comity becomes manifest. As was pointed out by the New Jersey Court of Chancery in Felt *v.* Felt, 59 N. J. Eq. 606 (45 Atl. 105, 49 Atl. 1071, 47 L. R. A. 546, 83 Am. St. R. 612), and by Mr. Justice Holmes in his dissenting opinion in Haddock's case, supra, the result of a contrary rule would be to bastardize children supposed to be the offspring of lawful marriage, and to make the relation of a man and woman either legitimate or adulterous as they happen to be within the limits of one State or another. Such a condition of the law is not to be tolerated any further than is plainly required by public policy. In the case of *Jackson* v. *Jackson,* 34 *Ga.* 511 (89 Am. D. 263), it was said that "comity is reciprocity." The laws of Georgia expressly permit a citizen of this State, whether this be the domicil of matrimony or not, to obtain a divorce, based upon constructive service of process, against a non-resident defendant. Manifestly it was intended and desired that such decrees should have extraterritorial effect; otherwise it would be necessary for a citizen of Georgia, when this State is not the domicil of matrimony, in order to obtain a universally valid divorce against a non-resident defendant, to seek out the defendant and sue in the State selected by the latter; and since the laws of most States require the plaintiff to be domiciled in the State where he seeks a divorce, the

plaintiff would be compelled to abandon his residence in Georgia and take up a permanent residence in the domicil of the defendant. It would, therefore, be impolitic, as well as unjust, to lay down the general rule that the courts of this State will never recognize a divorce granted in another State, other than the domicil of matrimony, based on constructive service of process upon the defendant. For in order that a Georgia decree, rendered under such circumstances, may receive recognition in other States, this State must be ready to reciprocate, as far as public policy will permit, by according to such decrees rendered in other States a like degree of efficacy in this State.

On the other hand, it would be equally as unwise and unjust to lay down the general rule that this State should recognize every divorce granted in another State against defendants domiciled in Georgia, regardless of the cause for which the divorce was sought or the manner in which it was obtained. It is easily conceivable that some States might grant divorces upon grounds not recognized by the laws of Georgia, and in violation of the public policy of this State. As was said by the Supreme Court of the United States in Haddock's case, supra, "Under the rule contended for, it would follow that the States whose laws were the most lax as to length of residence required for domicil, as to cause for divorce and to speed of procedure concerning divorce, would in effect dominate all the other States. In other words, any person who was married in one State [as for example, in Georgia] and who wished to violate the marital obligations would be able, by following the lines of least resistance, to go into the State whose laws were the most lax, and there avail of them for the purpose of the severance of the marriage tie and the destruction of the rights of the other party to the marriage contract, to the overthrow of the laws and public policy of the other States." Another effect of this rule would be, in many cases, to violate the general principle of law that no person should be deprived of property without due process of law,— that is, without notice and a reasonable opportunity to be heard in his own behalf. In a proceeding in personam, no judgment against a defendant is valid unless he has been actually served with process within the territorial limits of the court's jurisdiction, or has voluntarily appeared. Pennoyer v. Neff, 95 U. S. 714 (24 L. ed. 565). In proceedings in rem, if the res be within the court's ju-

risdiction, "due process of law" merely requires constructive notice to be given to the defendant by publication, actual notice being dispensed with on the theory that the owner is bound to know where his property is, and that he will be informed if any peril threatens it. Doughty v. Doughty, 27 N. J. Eq. 315. A proceeding for divorce partakes of "the nature of proceedings in rem rather than of proceedings in personam, the res being the status. . . At the same time these causes can not be said to be altogether proceedings in rem. There is a personal element that enters into them, not found in suits instituted merely to subject or affect property. . . It results therefore that these causes constitute in some measure a dividing line between proceedings strictly in rem and proceedings strictly in personam, partaking in part of the nature of each, the former however predominating. Hence they are often very properly denominated proceedings quasi in rem." Minor on Conflict of Laws, 191. "Accurately speaking, a proceeding in rem is a proceeding against tangible property, and actual notice is dispensed with on the theory that the owner is bound to know where his property is and what is being done with it. It is manifest this theory can not be applied to the relation of husband and wife." Doughty v. Doughty, 27 N. J. Eq. 315. Thus it often happens, where the only notice given a non-resident defendant is by publication in a local newspaper, that the defendant has no knowledge that divorce proceedings are pending; the plaintiff is granted a divorce upon an ex parte showing, and the marital rights of the defendant are destroyed without his having had any opportunity whatever to defend those rights. And "a sentence of a court, pronounced against a party without hearing him or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal." Windsor v. McVeigh, 93 U. S. 274 (23 L. ed. 914).

The laws of Georgia recognize the necessity of actual notice to the defendant of the pendency of the divorce proceeding, and require such notice to be given, where that is practicable, by mail, or actual service of notice,—not by publication merely. Civil Code, §§ 2432, 4978, 4979.

It follows from what has been said that in any attempt to lay down a general rule of comity governing the reception and enforcement of a divorce granted in another State, not the domicil

of matrimony, based upon constructive service of process upon the defendant in this State, a delicate regard must be had, as far as public policy will permit, for the rights of the plaintiff who has acted in good faith in procuring the divorce, and of innocent parties who have dealt with the plaintiff upon the faith of that decree; and a just regard had also for the rights and interests of the defendant. Examining the facts of the present case, we find that the husband left Georgia, the domicil of matrimony, and acquired in good faith a domicil in the State of Kansas, where, after a lapse of five years, he obtained, in accordance with the laws of that State, a judgment of divorce. The wife might have inquired into the jurisdiction of the court granting the divorce; and if it had appeared that the plaintiff had not acquired a bona fide domicil in Kansas at the time of instituting the proceedings, the decree would have been open to attack. Bell *v.* Bell, 181 U. S. 175 (21 Sup. Ct. 551, 45 L. ed. 804). But no such attack was made, and therefore we are bound by the recitals of that decree.

As to the grounds for divorce prescribed by the laws of Georgia and Kansas, there are certain points of difference, it is true,— the Georgia law requires desertion for the term of three years, while the Kansas statute requires only one. And the Kansas law recognizes one ground for divorce not recognized by the laws of Georgia, viz.: "gross neglect of duty." The grounds for divorce alleged by the husband in the Kansas court were, "gross neglect of duty," and "extreme cruelty." It requires no argument to show that there was nothing in the grounds upon which the divorce was granted which violates the policy or conscience of this State.

The proceedings in the Kansas court, which were properly authenticated, show that the husband, in conformity with the laws of Kansas, placed a copy of his petition together with a copy of the publication notice in an envelope, which he addressed and mailed, postage paid, to the wife in Atlanta, Ga.

The language of Mr. Vice Chancellor Pitney in the case of Felt *v.* Felt, 57 N. J. Eq. 101 (40 Atl. 436), is especially applicable to the facts of the present case: "We have not here to deal with a case where the ground of the divorce, as found by the foreign tribunal, was frivolous or not in accordance with recognized principles underlying the marriage state, or with a case where any im-

position, fraud, or 'concealment was practiced upon either court or party. . . We are bound to presume that the finding of the court of [Kansas] was based upon sufficient and unassailable evidence. Hence it appears that no injustice was done the wife." And under these circumstances we are of opinion that the principles of comity require that such decree be given the same faith and credit in the courts of this State that it has in the State in which it was rendered. In applying the principle of comity we have in view, of course, the fact that the courts of the State in which the decree was rendered recognize the validity of and give effect to decrees, in similar cases, of the courts of other States. Roe v. Roe, 52 Kan. 724 (35 Pac. 808, 39 Am. St. R. 367).

3. The rule announced in the third headnote, that alimony will not be allowed to the wife on a separate proceeding, after a total divorce has been granted at the instance of the husband, is sustained by the weight of authority; and the verdict in favor of the wife must, therefore, be set aside. 14 Cyc. 769; Downey v. Downey, 98 Ala. 373 (13 So. 412, 21 L. R. A. 677), and cases cited.

The question is not made in this case, and we do not make any ruling, as to what might be the wife's rights or remedies had there been in this State property of the husband, real or personal, owned by him at the time of the granting of the decree of divorce, which might have been seized and administered by a court of competent jurisdiction, in proceedings by the wife to subject such property to her claim for a support or allowance in the nature of alimony out of such property.

*Judgment reversed. All the Justices concur.*