MABEL W. PERKINS *vs.* GEORGE E. PERKINS.

Middlesex.    September 19, 1916. — October 16, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Marriage and Divorce. Domicil. Husband and Wife. Judgment,* Of other State.

A wife, who when living with her husband in this Commonwealth as their matrimonial domicil is deserted without justifiable cause by her husband who estab-

lishes his domicil in another State, if she continues to live in this Commonwealth
retains her domicil here, in spite of the legal fiction by which the domicil of the
wife commonly follows that of her husband.

In such a case this Commonwealth has jurisdiction over the matrimonial *status*
and the parties.

Where a husband and wife have their matrimonial domicil in this Commonwealth
and the husband without justifiable cause deserts his wife and establishes a
domicil in another State and his wife remains in this Commonwealth guiltless
of any marital wrong and ignorant of his place of abode until his return to this
Commonwealth after the expiration of three years, and where such deserting
husband during his absence has obtained from a court of the State of his new
domicil a divorce in accordance with the laws of that State for a cause which
would authorize a divorce by the laws of this Commonwealth, his wife hav-
ing had no actual notice and no knowledge of the proceedings, so that
the court had no jurisdiction of both parties, the decree of divorce thus
granted in the other State will not be enforced nor recognized in this Com-
monwealth and is no bar to a libel by the wife for divorce on the ground of
desertion.

What would be the effect of such a foreign divorce if the wife had actual notice
of the proceedings when it was obtained, was *spoken of* as a point that was
not before the court for decision.

LIBEL FOR DIVORCE filed on November 24, 1915.

The case was heard by *Morton*, J., without a jury. The evidence
is described in the opinion.

The libellee asked the judge to make the following rulings:

"1. That if the libellee in good faith left this Commonwealth
to become and did become a citizen of the State of Georgia and
after he had settled there he brought a libel for divorce in the
courts of the State of Georgia having jurisdiction of the subject
matter of divorce and then complied with the laws of Georgia,
as to service of process upon the libellant in this case and she did
not appear and the case went to trial in Georgia, the Georgia
court, as a matter of law, had jurisdiction of both parties as
required by R. L. c. 152, § 35.

"2. That a court has jurisdiction to pass a decree as to the
marriage *status* of the parties to a divorce suit, provided the court
has jurisdiction of the subject matter and a regular summons is
issued from that court to the person against whom the libel is
brought and through means of the summons has jurisdiction
of the person.

"3. That under the evidence in this case, the domicil of the
wife followed that of the husband to Georgia and the Georgia
court had jurisdiction of her person.

"4. That upon all the evidence in the case the divorce decree entered in the Georgia court is binding upon both parties."

The judge refused to make any of these rulings, and found and ruled as follows:

"This was a libel for divorce on the ground of desertion. The libellee set up in his answer a decree for divorce obtained by him in Georgia October 5, 1914. I find that the libellee left this State in good faith, and not for the purpose of obtaining a divorce, to become a citizen of Georgia, and that he did become a citizen of Georgia; that the divorce in Georgia was duly obtained in accordance with the laws of Georgia; that he complied with the laws of Georgia in reference to giving notice to his wife of the divorce proceedings, but that as a fact the libellant never received notice of said proceedings, although the libellee took all reasonable steps to find her address and to give her personal notice.

"The only question raised as to the validity of said divorce was as to the jurisdiction of the court over the libellant. I find upon this point that the libellee intended to desert and did desert his wife in the summer of 1912 and that he did not let her know and she did not know his place of abode. I rule that such desertion constituted an act upon the part of the libellee which was sufficient to enable her to acquire a domicil separate from his, and that she was legally domiciled in Massachusetts when her libel was brought.

"As the charge of desertion was proved, I find and rule that she is entitled to a decree *nisi* for desertion."

The libellee alleged exceptions.

The case was submitted on briefs.

*E. R. Anderson,* for the libellee.

*F. Ranney & D. P. Ranney,* for the libellant.

RUGG, C. J.    This is a libel filed in November, 1915, praying for divorce on the ground of desertion continued for three consecutive years next preceding the libel. The libellee set up in answer a decree for divorce obtained by him in Georgia on October 5, 1914. The pertinent facts as found by the judge are that the libellant and libellee were married and lived in this Commonwealth as their domicil until the summer of 1912, when the libellee deserted the libellant without letting her know his place of abode, and she remained in ignorance on that point until his return to this State late in 1914. He left this Commonwealth in good faith and not

for the purpose of obtaining a divorce, and became a citizen of Georgia. In that State, in conformity with its laws, he obtained a divorce on the ground of cruel and abusive treatment alleged to have been committed by the present libellant. Although he complied with the Georgia laws in giving notice to his wife, she never received notice of the proceedings. He returned from Georgia to Massachusetts in October, 1914, and it may be assumed that personal service of the present libel was made upon him here. The judge found that the charge of desertion was proved, and ruled that the libellant was entitled to a divorce. The question presented is whether the Georgia divorce is a bar to the present libel.

The case is not within the terms of R. L. c. 152, § 35.* The jurisdiction of any foreign court over the cause and the parties is open to investigation and decision by the court of the forum. *Andrews* v. *Andrews,* 176 Mass. 92, 94; *S. C.* 188 U. S. 14. The Georgia court did not have "jurisdiction of . . . both the parties." The wife was innocent of any marital wrong in 1912, when the husband deserted her without justifiable cause. Therefore her domicil did not follow that of the husband when he went to Georgia, but she legally was enabled to retain as her own, by reason of her continued residence here, the matrimonial domicil in this Commonwealth. His desertion was a wrong against her marital rights and enabled her to keep the old domicil regardless of the fiction that the domicil of the wife commonly follows that of the husband. *Shaw* v. *Shaw,* 98 Mass. 158. *Burtis* v. *Burtis,* 161 Mass. 508. *Bradford* v. *Worcester,* 184 Mass. 557.

It has been held, also, that the Georgia court did not have jurisdiction of the cause. The marriage *status* was not "within the sweep of the judicial power of that State." Where the parties are married in one State and there establish a matrimonial domicil,

---

* That statute is as follows: "A divorce decreed in another State or country according to the laws thereof by a court having jurisdiction of the cause and of both the parties, shall be valid and effectual in this Commonwealth; but if an inhabitant of this Commonwealth goes into another State or country to obtain a divorce for a cause which occurred here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this Commonwealth, a divorce so obtained shall be of no force or effect in this Commonwealth."

a domicil which is retained by one spouse who is innocent of any marital wrong, and which is abandoned by the other who is guilty of marital wrong, then the courts of the State of the matrimonial domicil have "jurisdiction over the marriage relation, and the proper courts of that State" can "proceed to adjudicate respecting it upon grounds recognized by the laws of that State, although" the other spouse has left that jurisdiction and "could not be reached by formal process." This proposition is declared in *Thompson* v. *Thompson*, 226 U. S. 551, at page 562, to be "clear, therefore, under the decision in the *Atherton Case* [181 U. S. 155] and the principles upon which it rests." Thus courts of the State of the matrimonial domicil, at the petition of one spouse retaining that domicil and innocent of any marital wrong, stand upon firmer ground than the courts of any other State in respect of jurisdiction over the marriage status. See, also, *Hood* v. *Hood*, 11 Allen, 196, and *Burlen* v. *Shannon*, 115 Mass. 438.

As the libellee did not go to Georgia for the purpose of obtaining a divorce and as cruel and abusive treatment on which the divorce was granted is recognized as a cause by R. L. c. 152, § 1, the Georgia divorce is not pronounced by said § 35 as of no force or effect in this Commonwealth.

Since the case at bar is not within the terms of our statute requiring recognition or declaring the invalidity of foreign divorces, it must be decided on general principles.

The decree of the Georgia court is not entitled to recognition here under the full faith and credit clause of the Federal Constitution. *Haddock* v. *Haddock*, 201 U. S. 562. Whether recognition and effect shall be given to it by courts of this Commonwealth depends upon principles of interstate comity. Such comity has been defined by Mr. Justice Gray in *Hilton* v. *Guyot*, 159 U. S. 113, 163, 164, as "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." The principle upon which judgments of foreign courts are accorded their full effect is that where parties have once litigated fairly a dispute in the

courts of any civilized country, the same question ought not to be tried anew by the courts of another jurisdiction. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 213. That principle applies with diminishing force where the essential elements of valid litigation are not all present, and reaches almost a vanishing point where the hearing is *ex parte* and the subject matter of the litigation is not in an international sense within the jurisdiction of the foreign court. On the other hand, it is highly desirable that as to a subject of such vital and far reaching importance as the dissolution of the marriage relation, there should be uniformity of practice between the several states of the Union in the recognition of judgments of sister States. Assertions of jurisdiction by one State should so far as possible be the correlative of recognition of jurisdiction in other States.

The federal Supreme Court, although without jurisdiction over the subject of divorce, is vested with power to declare with reference to it the principles by which interstate rights and obligations exist and will be enforced. If the principles so declared as to divorce are made a common basis for the exercise of interstate comity, there may be a closer approach to unity of decision among the several States. Two rules have been established. First: A decree of divorce by a court not having actual jurisdiction of both parties and of the subject does not come within the full faith and credit clause of the Constitution of the United States. *Haddock* v. *Haddock,* 201 U. S. 562. Second: The State having jurisdiction of the matrimonial domicil and of one spouse, innocent according to the decision of the courts of that State of matrimonial wrong, has jurisdiction of the matrimonial *status* and is clothed with power, after reasonable *ex re* notice, to enter judgments concerning it, which must be recognized by courts of the jurisdiction of the domicil of the other spouse. *Atherton* v. *Atherton,* 181 U. S. 155. *Thompson* v. *Thompson,* 226 U. S. 551, 562. It follows from these federal decisions that the courts of this Commonwealth under the circumstances of this case have jurisdiction of the matrimonial *status* and of the parties. The libellant has remained domiciled in this Commonwealth. She has been found, by the granting of the prayer of the libel, guiltless of marital wrong. The libellee committed a wrong against her when he deserted her here. The act of desertion was the initiation of a course of con-

duct which ripened into a cause for divorce under our law after the lapse of three years. R. L. c. 152, § 1. Although the husband might have broken that course of conduct at any time by return to the full performance of his marriage obligation, he did not do so, but pursued it to the end. He gave to the libellant no actual notice of the pendency of the proceedings instituted by him in Georgia. She was ignorant of them and had in fact no opportunity to defend against them.

If effect should be given to the Georgia divorce, the result would be that a marriage *status* established and maintained by wedding and cohabitation wholly in this Commonwealth will be severed at the instance of a husband faithless to his marriage vows, he having removed from our jurisdiction and sought the interposition of the courts of another State without actual notice to or knowledge by his wife, and she, innocent of any wrong on her own part, having continued to be domiciled in this Commonwealth. The libellant would find her marriage *status* destroyed and be without remedy for the wrongs committed against her. It would be an unseemly result if under the conditions here disclosed the husband could return to Massachusetts and establish here a new and lawful marriage relation directly in the face of a faithful wife whom he had deserted. Yet that result well might follow a recognition of the Georgia divorce. Due regard to the rights of our own citizens forbids the giving of such effect to a judgment of a court of a sister State, which, as we understand the decision of *Thompson* v. *Thompson*, 226 U. S. 551, did not have jurisdiction of the marriage *status* in an interstate signification, and which certainly acquired no jurisdiction over this libellant. In this connection the circumstance that the decree of divorce in the Georgia courts was granted before the present libel was filed, is of no consequence.

This Commonwealth, by the act of its legislative department in R. L. c. 152, § 5, has asserted jurisdiction to adjudicate upon the marriage *status* of those domiciled here for five years, or for three years if both the parties were inhabitants here at the time of the marriage, even as to causes occurring outside this Commonwealth and as against absent defendants, unless it appears that the libellant has removed here for the purpose of obtaining a divorce. This statute implies as matter of comity, due recognition of similar assertion and exercise of jurisdiction by other

States in the ordinary case, as far as they affect our citizens. But that does not extend to a case like the present, where, without actual chance for her to be heard, the foreign divorce, if recognized here, would destroy the marriage *status* of an innocent spouse faithful to her marriage obligations and continuously resident in this Commonwealth, which is the only matrimonial domicil of both parties. In *Joyner* v. *Joyner,* 131 Ga. 217, *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, and *Felt* v. *Felt,* 14 Dick. 606, which went far in giving effect as against their own citizens to divorces of other States on grounds of comity, it appeared that there was actual, as distinguished from constructive, notice to such residents of the pendency of the foreign divorce proceedings. That point is not now before us. So far as *Toncray* v. *Toncray,* 123 Tenn. 476, 483, and *Howard* v. *Strode,* 242 Mo. 210, 225, are inconsistent with the result here reached, they do not state the law of this Commonwealth. The decision of *Miller* v. *Miller,* 89 Kans. 151, depended upon the express terms of a statute.

The conclusion here reached is in harmony with the greater number of cases in this country as reviewed and interpreted at length in *Haddock* v. *Haddock,* 201 U. S. 562. See, also, *Parker* v. *Parker,* 137 C. C. A. 626.

It follows that the libellee's requests for rulings all were denied rightly and that the rulings made were correct.

*Exceptions overruled.*