G. E. McQUEEN v. ANALEE MOORE MACQUEEN.

179 So. 725.

Opinion Filed February 14, 1938.

Rehearing Denied March 29, 1938.

*Latham & Elmore,* for Appellant;

*Milam, McIlvaine & Milam,* for Appellee.

CHAPMAN, J.—On May 10, 1937, appellant, who was plaintiff in the Court below, filed in the Circuit Court of Duval County, Florida, his bill of complaint against Analee Moore MacQueen, his said wife. The Bill of Complaint alleged that plaintiff was a resident of the State of Florida, County of Duval, and had been for a period of ninety days prior to May 10, 1937, and that the defendant resided at 900 Ninth Avenue West, Birmingham, Alabama. The bill of complaint prayed for: (a) that the court take jurisdiction of the subject matter and the parties to the cause; (b) that the court will by appropriate decree modify the provisions of the decree entered on the 22nd day of June, 1933, in the Circuit Court of the Tenth Judicial Circuit of the State of Alabama; (c) that the court will grant a divorce *avinculo matrimonii* to the plaintiff and dissolve the bonds of matrimony between the parties.

Service by publication was started, when the defendant on the 18th day of June, 1937, filed her special appearance objecting to the jurisdiction of the court and moved the court to quash process and dismiss the cause for lack of jurisdiction. The motion recites that the parties were married in the State of Alabama, and on August 6, 1932, the defendant obtained in the Circuit Court of Jefferson County, Alabama, a decree of judicial separation and separate maintenance from the plaintiff and the plaintiff had recognized the same by payment of alimony and support and that the Alabama Court retained or had jurisdiction of the subject matter and the parties; that the marital domicile of the parties is still in the State of Alabama and the Florida Courts, as a matter of law, have no jurisdiction of the parties or the subject matter of the litigation. A copy of

the proceedings in the cause had in Jeffereson County, Alabama, was attached to and made a part of the motion.

On October 1, 1937, the lower court entered an order dismissing the bill of complaint on the ground that it was without jurisdiction to hear the cause, and an appeal was taken therefrom and the cause is here for review of the order of dismissal.

It is contended that the order of dismissal on the ground because of the lack of jurisdiction on the part of the Florida court is contrary to law. The bill of complaint alleges that "G. E. MacQueen is a resident of the State of Florida and the County of Duval and has been for more than ninety (90) days prior to the institution of this suit and that Analee Moore MacQueen is a resident of Birmingham, State of Alabama, residing at 900 Ninth Avenue, West." This Court had before it a similar allegation in the case of Bowmall v. Bowmall, 127 Fla. 747, text 754-56, 174 So. 14, viz.: "That she (Rosalind Nathan Bowmall) was a resident of Hollywood, Broward County, Florida, that she was over the age of 21 years, that she had resided in Hollywood, Broward County, Florida, for a period of more than 90 days next prior to the filing of the bill of complaint." The Court in passing on this question said:

"If the complainant was not entitled to maintain the divorce suit within the jurisdiction invoked, then the court was without power to issue its process binding the defendant and acquired no jurisdiction of the subject matter of the suit. Therefore, one of the controlling questions presented to the Court for determination was whether or not the wife had the capacity to acquire a separate domicile of her own at the time she alleges that she did establish a separate domicile in the State of Florida. As to whether or not she had done those things necessary to be done to establish a separate domicile in Florida and whether or not they were

done with intent to establish a permanent separate domicile in Florida more than ninety (90) days prior to the filing of the bill for divorce, provided she possessed the capacity or had the right under the law to establish such separate permanent domicile, was a question of fact to be determined by the Chancellor from the evidence and was a question which he did determine against the contention of the appellant. There is ample legal evidence in the record to support the findings of the Chancellor in this regard, but when the jurisdiction of the court was challenged the burden was on the complainant to show that she was in position, at the time above referred to, to acquire and establish a separate domicile from that of her husband and this she failed to do. * * *

"The jurisdiction of the court having been properly challenged, it is necessary for complainant to establish her right to maintain her suit before the court may proceed by requiring the defendant to plead further and to adjudicate the rights of the parties.

"The order appealed from must, therefore, be reversed and the cause remanded with directions that the Chancellor take and consider such testimony as may be necessary to determine whether or not the conduct of the husband toward the wife made it proper or necessary for the wife to acquire and establish a separate domicile from that of the husband for the purpose of a suit for divorce by her, and thereupon to enter such order as the facts, taken together with the evidence heretofore adduced and embraced in this regard, may warrant."

The question of residence is one of law and fact and the Chancellor in the case, *supra,* heard testimony on this issue and subsequently made an order. The cause was reversed with directions to take more evidence on the same issue. In Warren v. Warren, 73 Fla. 764, text 778-79, 75 So. 35,

L. R. A. 1917E 490, on the mixed question of law and fact the Court said:

"The evidence in this case is insufficient to support the contention that the complainant at the time of filing her bill was 'actually, legally and *bona fide* domiciled in this State as a citizen thereof.' She testified that she was a citizen of Florida, of the County of 'Key West.' As there is no such county, she probably meant that she resided in Monroe County in which the City of Key West is located. But if she was actually. legally and in good faith residing in this State, being apparently a woman of intelligence and a reasonable amount of information as to the political subdivisions of the State of which she claimed to be actually and *bona fide* a citizen, it seems that she might have known the name of the county in which she resided. * * *"

In Minick v. Minick, 111 Fla. 469, text 481, 149 So. 483, on a similar point this Court said:

"The general rule is that the domicile of the wife is that of the husband, and it has been held in a number of jurisdictions that the operation of this rule ordinarily is not affected by the fact that the wife is living apart from her husband in the absence of a judicial decree of separation or divorce, and that a wife who has left her husband and is living apart from him without just cause can acquire no separate domicile of her own prior to divorce, at least not in the absence of exceptional circumstances. 19 C. J. 414-416; 9 R. C. L. 543-546. * * *"

This Court in the case of Herron v. Passailaigue, 92 Fla. 818, text 827-8 and 834-36, 110 So. 539, had before it not only the question of residence, but the legal sufficiency of a divorce obtained in the State of Louisiana, when it said:

"On the question of whether or not Mrs. Passailaigue had acquired her domicile in Louisiana at the time of her petition for divorce was filed the petition alleges that she

was 'residing' in Caddo Parish, Louisiana. Appellant contends that 'residing' in Caddo Parish is not the equivalent of a 'domicile' there. In this connection appellee does not seem to be supported by the authorities. The rule is well settled that the term 'residence,' 'residing' or equivalent terms, when used in statutes or actions or suits relating to taxation, right of suffrage, divorce, limitations of actions and the like are used in the sense of 'legal residence'; that is to say, the place of domicile or permanent abode as distinguished from temporary residence. Downs v. Downs, 23 App. Cas. D. C. 381; Hamill v. Talbott, 81 Mo. App. 210; Graham v. Graham, 9 N. D. 88, 81 N. W. 44; Michael v. Michael. 34 Tex. Civ. App. 630, 79 N. W. Rep. 74; DeMeli v. DeMeli, 120 N. Y. 485, 24 N. E. Rep. 996, 17 Am. S. Rep. 652; McShane v. McShane, 45 N. J. Eq. 341, 19 Atl. Rep. 465; Brundred v. Del. Hoyo, 20 N. J. L. 328; Connolly v. Connolly, 33 S. D. 346, 146 N. W. Rep. 581; Miller v. Miller, 88 Vt. 134, 92 Atl. Rep. 9; Barber v. Barber, 151 N. Y. S. 1064, 89 Misc. Rep. 519; Fleming v. Fleming, 36 Nev. 135, 134 Pac. Rep. 445; Sneed v. Sneed, 14 Ariz. 17, 123 Pac. Rep. 312; Cohen v. Cohen, 3 Boyce (26 Del.) 361, 84 Atl. Rep. 122; Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 Atl. Rep. 684; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations (6th Ed.) 1748.

"Divorce in some form has existed since the beginning of history. Under the Mosaic law the husband could write the wife a bill of divorcement when she was at liberty to go and become another man's wife. Under early Roman law divorce was subject to the caprice of the husband, but later was by agreement of both parties. In modern times in civilized countries divorce has been subject to regulation by the State or church in control. Except as granted by Ecclesiastical Courts and Acts of Parliament in rare cases,

divorce was unknown to the common law. The first general Act of Parliament authorizing divorces was enacted more than eighty years after the Declaration of Independence. Divorces in this country were first granted by Special Acts of the Legislature, and later by general statutory provisions. No branch of the law has become more intricate and has given rise to more complex results. If both parties are living in the same State the situation is easy; but when they have separated and live in different States, what court has jurisdiction? Here is the point of cleavage between two lines of decisions in this country: The first of which is that no judgment is good without personal service, and the second is, that marriage is *a res* and the court of the matrimonial domicile has full jurisdiction.

"Bearing in mind these two conflicting theories of jurisdiction and the law as enunciated in the cases cited, we think the following rules governing the recognition of foreign divorces may be stated as being well settled: (1) If the husband obtains a divorce in the State of the matrimonial domicile, such a divorce is entitled to full faith and credit under Section 1 of Art. IV of the Federal Constitution. Even though rendered on constructive service. Thompson v. Thompson, *supra* (226 U. S. 551, 33 Sup. Ct. Rep. 129). (2) If the husband abandons the wife without cause the matrimonial domicile remains with the wife and she may obtain a divorce there on constructive service that will be binding anywhere. Parker v. Parker, 222 Fed. Rep. 186; Hall v. Hall, 123 N. Y. S. 1056. (3) The rule is well supported that a decree of divorce by a court not having actual jurisdiction of both parties and of the subject matter does not come under the protection of the full faith and credit clause of the Federal Constitution. Perkins v. Perkins, 225 Mass. 82, 113 N. E. Rep. 841, L. R. A. 1917B 1028, and cases cited. (4) If the husband after

separation establish his domicile in a State other than the State of the matrimonial domicile he may obtain a divorce under the law of that State, but it will be binding in no other State. Perkins v. Perkins, *supra*. (5) If the wife after separation removes to another State and acquires a domicile there, she may obtain a divorce by constructive or substituted service under the law of that State binding only in said State. Decrees of divorce covered by rules four and five, the one in the instant case being covered by the latter, while not entitled to full faith and credit in other States, may generally be given effect by comity in such States if not subversive of their policy or interests. 2 Schouler on Marriage, Divorce, Separation and Domestic Relations (6th Ed.); DeBouchel v. Candler, *supra* (296 Fed. Rep.); Ditson v. Ditson, *supra* (4 R. I. 87); Felt v. Felt, *supra* (59 N. J. Eq. 606, 45 Atl. Rep. 105, 49 Atl. Rep. 1071); Dunham v. Dunham, *supra* (162 Ill. 589, 44 N. E. Rep. 841); Davis v. Davis, *supra* (17 Colo. 37, 197 Pac. Rep. 241); Kenner v. Kenner, 139 Tenn. 211, 201 S. W. Rep. 779; Joyner v. Joyner, *supra* (131 Ga. 217, 62 S. E. Rep. 182, 18 L. R. A. [N. S.] 647); Perkins v. Perkins, *supra;* Gildersleeve v. Gildersleeve, *supra.*"

We think counsel for defendant by filing a special appearance followed the proper practice in raising the question of the lack of jurisdiction in the court below under the authority of Bowmall v. Bowmall, *supra*. It is contended that the question of residence cannot be raised in the Florida court because the identical question had been determined by the courts of Alabama. The last order made by the courts of Alabama in the cause is dated June 22, 1933, and signed by J. Russell McElroy, Circuit Judge, in equity sitting. The allegation of the bill of complaint is sufficient to receive evidence on the question of residence on the part of G. E. MacQueen. Considerable time elapsed from

the date of the last order entered by the Alabama Court and the. filing of the bill of complaint in the Circuit Court of Duval County, Florida, and the intervening period, if the evidence is sufficient, will permit the plaintiff to establish his residence in Florida and thereby authorize the maintenance of the suit at bar.

Counsel for appellee cites the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. We have examined a number of authorities treating the principles enunciated in Haddock v. Haddock, *supra,* but the clearest and most concise comment thereon is found in Volume 2 (6th Ed.) of Schouler on Marriage, Divorce, Separation, etc., pages 2084-5, viz.:

"* * * When the Haddock case was decided there had grown up in most of the States elaborate systems by statute and practice of proceedings in divorce in the absence of personal service, and it was at first assumed that all this law was now in the waste basket, but no such result was intended by the court or has in effect taken place. What the court in the Haddock case said was that a State need not recognize a foreign divorce obtained without personal service by a husband who had left the matrimonial domicile, but might do so if it desired, and most States have gone right on rendering such decrees and recognizing those of other States. It is said that the Haddock case has changed the law only in four States, namely, New York, North Carolina, Pennsylvania and South Carolina, which now decline to recognize foreign divorces obtained without personal services by spouses who have left the matrimonial domicile. The validity of such divorces seems now to depend on whether action is brought at the matrimonial domicile or not. The final outcome of the controversy seems to be that if the spouse leaves the State where they are living together (the wife leaving for good cause) and goes to

another State, and there obtains a divorce on substituted service, he can obtain a divorce which the first State may but does not need to recognize, while the spouse who remains in the State of the domicile may obtain a divorce which must be recognized everywhere."

Also pages 2087-8, par. 1964:

"Divorce may be granted by a court of a State of which the plaintiff is a resident even though on constructive service by publication, but where service is by publication only, the full faith and credit clause of the Federal Constitution does not compel a foreign court to recognize it unless granted by the court of the matrimonial domicile, but still they may do so as a matter of comity if in accordance with their policy, although the defendant was in fact actually in the State which granted the divorce at the time."

Also pages 2102-3, par. 1983:

"* * * Jurisdiction of the person of the defendant may be acquired in the foreign State by publication, or other substituted service, although the defendant is, in fact, a non-resident. And this applies to either spouse, although the other has never been in the State where the suit is brought; and on such service a decree can be obtained which should be respected in another jurisdiction. The effect of such a decree, in the State that chooses to recognize it, is to free both spouses from the bonds of matrimony previously binding them. But it is optional with each State to accord recognition or to refuse it, since a refusal has been held, by the highest authority, not to violate the full faith and credit clause of the Federal Constitution. That is, the courts of the several States may still recognize such foreign decrees on the ground of comity. The fact that the State in which recognition is sought provides by its own laws for the rendering of such decrees in favor of a resi-

dent against a non-resident on publication indicates the duty of according validity on the ground of comity to similar action in other States, where there is no material evidence of unfairness, and the proceedings are not open to an attack of fraud. Such a decree will be upheld in the State of the domicile of the libelee where it appears that he had actual notice of the proceedings and that he employed counsel to watch the course of the action, although they entered no appearance and at his direction made no defense. * * *"

An examination of the final decree dated June 22nd, 1933, as disclosed by the record, clearly shows that the Circuit Court of Jefferson County, Alabama, retained jurisdiction of the cause for such further order as should from time to time become necessary because of the changed conditions of the parties as revealed by the language of the order, viz.:

"* * * It is therefore ordered, adjudged and decreed by the Court that the Complainant, Analee Moore MacQueen, have and recover of the respondent, Giles E. MacQueen, and that the said Giles E. MacQueen to pay to the said Analee Moore MacQueen the sum of One Hundred Dollars ($100.00) each calendar month, for her separate maintenance and support, beginning with and including the month of June, 1933, and continuing for each month thereafter, unless and until otherwise ordered by this Court, said payments to be made on or before the last day of each month. * * *

"It is further ordered, adjudged and decreed that this cause be and the same is hereby retained for such further orders and decrees as may be necessary to enforce compliance herewith, or otherwise, *as the equities of the cause may require.*"

It appears that the Courts of Alabama retained jurisdiction of the cause for the purpose of making such other

order or orders "as the equities of the cause may require," authorizes the Courts of Alabama to modify the order or decree so entered, provided the evidence shows a changed or altered condition of the parties. If the Courts of the State of Alabama have such authority, should the parties appear there and present a justiciable cause, then under Article IV and Section 1 of the Federal Constitution, which gives full faith and credit to each State of the public acts, records, and judicial proceedings of every other State, and under the authority of Herron v. Passailaigue, 92 Fla. 818, 110 So. 539, the Courts of Florida would have jurisdiction to hear and determine not only the suit for divorce, but the application for a modification of the alimony order entered in Jefferson County, Alabama, under date of June 22nd, 1933.

The order appealed from is reversed with directions for further proceedings not inconsistent with this opinion. It is so ordered.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, C. J., dissents.

BROWN, J., dissents in part and concurs specially in the conclusion.

BROWN, J. (dissenting in part and concurring specially in the conclusion).—I think a special appearance of this sort is limited to the question of complainant's *bona fide* residence or domicile in this State. If he is a *bona fide* resident, domiciled in this State for the statutory period, he had the right to file this suit. The question as to whether the Florida court can modify the decree for separate maintenance rendered in Alabama could be raised by answer and would come up for adjudication in the course of the trial of the cause, but should not be settled on a special appearance of this nature. Such is my understanding of the Bowmall case.