JOHN L. GREISEN, Appellant, v. MAUDE H. GREISEN, Appellee.

200 So. 523

En Banc

Opinion Filed February 11, 1941

Rehearing Denied March 6, 1941

*J. Carl Lambdin* and *Osmond R. Bie,* for Appellant;

*Thompson & Aikin* and *J. Lewis Hall*, for Appellee.

TERRELL, C. J.—This appeal is from a final decree of divorce predicated on extreme cruelty and frequent indulgence in a violent and ungovernable temper. Appellant contends that the bill of complaint does not allege and that the evidence does not prove acts of violence or mistreatment such as would warrant a divorce on either ground. Hickson v. Hickson, 54 Fla. 556, 45 So. 474, and like cases relied on to support this contention.

In these cases, the acts of violence consisted largely in the administration of physical force. It is quite true that in the case at bar, physical force was not applied but extreme cruelty as ground for divorce does not necessarily require a paddling or the giving of a black eye. What constitutes extreme cruelty depends on the temperament, the culture, and other attributes of the individual. Extreme cruelty to a Chrisian, a Chinaman, or a Hindoo might not be extreme cruelty to a pagan, an Indian, or a Mohammedan. Diem v. Diem, 141 Fla. 260, 193 So. 65.

Neither of the parties to this cause were inexperienced neophytes. They were in fact both products of the last years of the square dance, the hoop skirt, and the mother hubbard era, the era that produced turnip greens, cracklin' bread, and mint julep. The plaintiff was a lady of means, culture, experience, and travel. She was possessed of a spacious home with every modern appointment but a government mortgage. She was as modern as a movie star, this being her fourth ablution in the popular old pool of matrimony.

The defendant was a dancing master and a stranger to the lush time and luxuries that had been the portion of the complainant. Like most of us, he was poor in goods, narrow in horizon, and the most he endowed his bride with was tails and a nasty disposition. In age, they were about

one olympiad removed, but they loved at first sight, courted briefly, wedded and lived together hastily, the whole span being less than a year. He says she made the advances, bought the flowers, furnished the engagement ring, and carried him to her home after the wedding. She reveled in clubs, dinners, and cocktails, but he embalmed his manners and turned rude at such functions. She says he contributed nothing to the family support but he denies this charge.

The trouble was in marital perspective. Their desires and aspirations led in the opposite direction, the spirit of give and take had vanished and they had reached the age when it was easier to break than it was to bend. It was charged that they contracted the marital state for reasons that are fantastic to say the least and that both were disappoined in the prize they drew. When the charges and counter charges are dissected, it is little wonder that the fat was in the fire before the honeymoon passed into its second phase.

It is not difficult to understand how domestic felicity would vanish before such concepts as are exemplified in the record about as quickly as the echo from the wedding bells. Neither party seems to have gotten what they bargained for. She refused to give him carte blanche to her bank account. At home and elsewhere, he got irritated at the slightest attention paid his wife. He became so vindictive that he would lie awake at night to upbraid her, took offense at everything she did, insulted her company in public for their attention to her and in other ways made himself a nuisance. There is no law in this country that requires a woman to feed and house a man to hear him growl. In fact, if his growl is pitched in high tenor, he is on parity with King Solomon's brawling woman in a wide house.

Taken all in all, the record presents a rare case. The evidence on all points is in conflict but the chancellor who

heard it and entered the decree of divorce is one of the best assayers of human kind that ever donned the ermine and warmed the woolsack. His judgment is therefore affirmed.

Affirmed.

WHITFIELD, BUFORD, CHAPMAN and ADAMS, J. J., concur.

BROWN, C. J., concurs in judgment.

THOMAS, J., dissents.