MARION RICE v. ARCHIBALD E. RICE

4 So. (2nd) 850

Division B

Opinion Filed December 5, 1941

*Frank Redd,* for Appellant;

*Tom W. Butler,* and *Paul C. Albritton,* for Appellee.

TERRELL, J.—In March, 1941, appellee, as complainant, filed his bill for divorce against appellant charging extreme cruelty and habitual indulgence in ·a violent and ungovernable temper. Answer was filed, a master was appointed, testimony was taken, and a final decree of divorce was entered on the same day the bill of complaint was filed. A property settlement was agreed on and was incorporated in the final decree.

One week after the final decree was entered, defendant moved to vacate it and to rescind the property settlement. Twenty five days later, a new motion to vacate was tendered in which more specific reasons were set up. A motion to dismiss the motion to vacate on the part of the plaintiff was granted and this appeal was prosecuted.

Appellant contends that the final decree of divorce including the property settlement should be vacated and set aside (1) for errors on the face of the record, (2) for fraud practiced on her and (3) for fraud and collusion practiced on the court.

The allegations of fraud and collusion practiced on the defendant and the court consisted in (1) alleged

misconduct of complainant with another woman prior to the suit for divorce, (2) charges of misconduct of defendant with a Cuban while she and complainant were on a visit to Havana, (3) that complainant told her (defendant) he had grounds to divorce her and was going to do so and take the two minor children, (4) that complainant would prove that she gave way to her passion and was convicted for assaulting another child, and (5) that the property settlement was entirely inadequate.

There are other charges with reference to the employment of counsel but taken as a whole none of them meets the test for a motion to vacate the final decree. They could all have been set up in the answer to the bill of complaint, their merits considered and evidence offered to support them. The record discloses that the defendant had able counsel at every step in the divorce proceeding and the chancellor found that no fraud or collusion was practiced on him or the defendant.

The property settlement was reached after nearly a week of negotiation and controversy and consisted in the payment of $20,000 to the defendant and the provision of a trust of $15,000 for the two children to be paid defendant for their support at regular intervals in stated amounts. In this, she had the advice of counsel and acknowledged in terms that she had read the instrument providing for the property settlement carefully and that she considered it "in all respects equitable, adequate, and sufficient for her separate support and maintenance and for the support, education, and maintenance of the issue of the marriage, and that she has entered into this agreement as her own free and voluntary act after due consideration."

In this situation, we find no reason to reverse the chancellor on this point. The motions to vacate were very similar in import and amounted to nothing more than a petition for rehearing of the final decree. The movant had notice of and was actually present by counsel at every step in the divorce proceedings. Her motions to vacate sat up no evidence of any factual situation that she was not in possession of when the final decree of divorce was granted. Her charges of fraud and collusion are insufficient and are presented at the wrong time. Mabson v. Mabson, 104 Fla. 162, 140 So. 801; Braznell v. Braznell, 140 Fla. 192, 191 So. 457.

As to errors on the face of the record, it is first contended that the allegations of ninety days residence was insufficient but that if it had been sufficiently alleged, it was not proven.

Chapter 16975, Acts of 1935, requires that in order to secure "a divorce the complainant must have resided ninety days in the State of Florida before the filing of the bill of complaint." The bill in this case charges the residence of complainant substantially in the language of the statute and we have approved such a charge. McQueen v. McQueen, 131 Fla. 448, 179 So. 725. True we have held in effect that if the evidence shows that the residence was not bona fide but was merely for the purpose of divorce, the latter should not be granted but there is no such showing in this case. The assault on this ground is technical and not convincing.

It is next contended that the allegations of extreme cruelty and habitual indulgence in a violent and ungovernable temper are not sufficient and if they were

they were not proven and corroborated as required by the law of this State.

On the point so posed, this case is similar to Diem v. Diem, 141 Fla. 260, 193 So. 65. We have here a man approaching seventy seeking a divorce against his wife who is approaching her middle thirties. They had been married about ten years and had two children. He alleges that for the past four or five years almost every day, two or three times a day, she threw a tantrum and addressed him as "an old man" or a "damned old fool" or "you poor old fool" and told him she could hardly wait for him to die. She coupled these salutations with several varieties of nasty epithets not necessary to include in this opinion. He also alleges that she would indulge in disgraceful scenes at the table and curse him in language so indecent he would leave the room. He says that her persistent course in this and similar conduct had made him a nervous wreck and that he had lost thirty-four pounds.

There was evidence to support these charges and the defendant did not challenge or offer any testimony to disprove them. In Diem v. Diem, *supra*, and Greisen v. Greisen, 146 Fla. 94, 200 So. 523, we were confronted with a situation very much like the present and there discussed the question of what abuse of one spouse by another constituted extreme cruelty. It is unnecessary to say more on that point here.

On the whole, this case is just another picture of what happens to Grandpa in nine cases out of ten when he gets home from Grandma's funeral with some cash and goes angling for a senorita the same vintage of his younger daughters. It is somewhat remarkable that he lacks the intuition to discern that

it's the cash and not Grandpa she is playing for, but it is not remarkable that she becomes irritated with his aberrations and wants to "cuss" him when he lingers overtime. Such is the postlude to the marital union when actuated by folly on one side and economic considerations on the other.

Much is said in the brief of appellant about the fact that the bill of complaint and the answer were filed, the master appointed, the testimony was taken, the master's report filed, and the final decree was entered the same day. The answer to this charge is that the defendant offered no defense; true she denied categorically the allegations of extreme cruelty but offered no evidence to disprove them. There was no suggestion of collusion or a consent decree and counsel for both parties stipulated that the matter might be taken up for final disposition at once. Such speed lays ground for suspicion and is not approved in matters of this kind but it is possible under the law and we find nothing that would warrant reversal on this point.

Affirmed.

BROWN, C. J., CHAPMAN, and THOMAS, J. J., concur.