### Wilson v. Wilson.

(Decided Oct. 1, 1937.)

(As Modified on Denial of Rehearing Feb. 11, 1938.)

B. J. BETHURUM for appellant.

H. C. KENNEDY and KENNEDY & KENNEDY and E. BERTRAM for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Pulaski circuit court under which the chancellor refused to require the appellee, J. T. Wilson, to make further contributions to the support of his infant daughter and, in the same judgment, refused to take the daughter away from the custody of the appellant, Eva Wilson, and award such custody to the appellee. Mrs. Wilson has appealed from that portion of the judgment refusing to require the further payment of maintenance, and Mr. Wilson has prosecuted a cross-appeal, complaining of that portion of the judgment which denied to him the custody of his daughter.

The proof in the case has gone far afield and is utterly irreconcilable on many points. Mr. and Mrs. Wilson were married some time about the year 1918. They had three children—two boys, the youngest of whom is now in high school, and a daughter who is now about nine or ten years of age. In the summer of 1930 Mrs. Wilson filed this suit for divorce, charging, amongst other things, cruel and inhuman treatment on the part of her husband. Mr. Wilson filed an answer to these charges, and, by a counterclaim, sought a divorce based on various charges, which he was unable to sustain by proof. The chancellor was of the opinion that Mrs. Wilson had failed to establish the allegations of her petition, but concluded that the unfounded charges asserted in the counterclaim were of such a na-

ture as to constitute cruel and inhuman treatment, and for this reason granted her a divorce. No provision was made for permanent alimony or for maintenance of the children, but this question was left open, to be determined if the parties themselves could not agree thereon. Thereafter Mr. and Mrs. Wilson entered into an agreement by which the custody of the two boys was awarded to Mr. Wilson and the custody of the little girl was given to Mrs. Wilson. Various other provisions in this contract provided for the payment of alimony to Mrs. Wilson and maintenance for the children. This agreement was accepted by the court and incorporated in a judgment entered in the divorce proceedings. About ten months later a second agreement was entered into, under which Mr. Wilson agreed to make a lump sum settlement of $1,900 "which shall be in full settlement of all alimony and support of" the little girl. It was further expressly provided that Mr. Wilson was released by this agreement from making any allowance for the support of the infant daughter. It is claimed by Mrs. Wilson, and categorically denied by appellee, that at the time this second agreement was entered into Mr. Wilson represented that his father was putting up the necessary cash for the lump sum settlement and that he, the father, would not do so unless Mrs. Wilson agreed to assume the support of her daughter, and that Mr. Wilson stated that, in spite of the provisions of the contract, he would nevertheless make contributions to the support of the little girl.

Not long after the divorce was granted, Mr. Wilson married again and set up a home in a nearby town with his second wife and his two sons, where they lived for something over three years. In February of 1935 the appellant shot and killed the second Mrs. Wilson. She was later acquitted of a charge of murder on her plea of temporary insanity. It is claimed that Mr. Wilson thereafter ceased making any payments to appellant for the support of their daughter. Mr. Wilson denies that he ever made payments for the support of the child following the execution of the contract above mentioned. Whatever may be the true state of facts, it is undisputed that no payments have been made since February, 1935. Thereafter, in September, 1935, Mrs. Wilson caused the divorce case to be redocketed and

moved for an allowance for the benefit of her infant daughter. Mr. Wilson filed a response to this notice and a counterclaim in which he asserted that the appellant was not a proper person to have the custody of the child, and asked that this custody be awarded to him.

The proof indicates that the little girl is well cared for, well trained, and she herself testifies that she wishes to remain with her mother. Howsoever unfortunate may have been the career of appellant since her divorce, we are unable to say from the evidence that the chancellor has abused his discretion in refusing to disturb his previous judgment in this particular.

Appellee does not contend that he could by the contract avoid his legal duty to support his daughter. Wilson v. Wilson, 251 Ky. 522, 65 S. W. (2d) 694. He does contend, and we think with reason, that, so long as appellant retains custody of the child under the contract and judgment, it is she who has the primary duty thereunder to maintain the child.

It is not entirely unnatural, in view of the circumstances presented by the testimony in this case, that appellee should refuse to make payments to his former wife even for the maintenance of his child. Whoever may have been originally at fault, there can be no doubt but that an irreparable breach has occurred and an utter lack of confidence in each other exists. Even if Mr. Wilson made the alleged representation that he would support the child if Mrs. Wilson would sign the contract for a lump sum settlement, it is difficult to see how such a statement could vitiate that agreement. Appellant went into the affair with her eyes open and chose to rely upon the alleged parol promise in the face of a written contract which she understood. If she is unable to support the child in the future, appellee can be compelled to perform his duty in this particular in spite of the contract. Until such a showing is made, we are of the opinion that the chancellor rightly refused the relief asked. Whether a change in the custody of the child or a requirement that appellee support her should be made at some time in the future are questions which we do not now undertake to determine. Appellee does not express an unwillingness

to contribute to the maintenance of his daughter, but simply toward making any payments from which appellant might benefit. Certainly the child should not be made to suffer from the breach between her parents if it can be avoided. No doubt appellee himself will be able from time to time to aid her without the intervention of a court order. His testimony indicates that he recognizes this obligation. For the present it is sufficient to say that we are not convinced that the chancellor erred in either particular in the controversy now presented.

Appellee is, himself, in a better position to make a voluntary plan for the proper support of his daughter, either by making payments directly to her or through some intermediary other than appellant, than is any court. He is also in a better position to determine the child's needs than we are. His voluntary action in this particular may repay him in the preservation of the affection of his daughter for him when a compulsory order of court, should one be necessary, would satisfy nothing other than to compel the performance of the legal duty which he already recognizes. If it should be made to appear that the child is not being properly cared for, the chancellor can make provision for payments through the designation of a trustee or guardian. So far as the record before us shows, the child is now being supported in accordance with her station in life. It is her welfare alone that is to be considered in the determination of any change in the arrangement in the future.

The judgment is affirmed on both the original appeal and the cross-appeal.