ERMA DIEM v. ALBERT DIEM

193 So. 65
Division A
Opinion Filed January 5, 1940
Rehearing Denied January 25, 1940

*Joseph Ginsberg* and *Scarlett & Futch,* for Appellant;

*Francis P. Whitehair, Hull, Landis & Whitehair,* for Appellee.

TERRELL, C. J.—Appellant and Appellee were married in October, 1929, and lived together as man and wife until November, 1934. A former suit for divorce by appellee having been dismissed without prejudice, this suit was instituted by him in December, 1936, and the final decree

was entered in January, 1939. The defendant appealed and the plaintiff filed cross assignment of error. It is the usual case in which an old man possessed of a sizeable wad of filthy lucre got messed up with a young woman and, as usual, the old man's wad caused trouble.

Appellant contends that since extreme cruelty is the sole ground relied on for divorce, the final decree should be reversed because the bill of complaint fails to allege that any of the acts relied on to constitute extreme cruelty were done with the deliberate intent to inflict pain and suffering, that none of them were cruel *per se* and that none of them were continued and of such ruthless character as to prevent the injured spouse from performing his marital duty.

It is quite true that in the criminal law, intent is an important element and must be shown but the statute granting a divorce on the ground of extreme cruelty, Section 4983 (4), Compiled General Laws of 1927, does not require the bill to allege or the evidence to show that the acts of defendant were done with a deliberate intent to cause mental pain and suffering to the complainant. If it alleges a course of conduct that is shown to have met the terms of the Statute, that is sufficient.

The bill of complaint in this case alleges such a course of conduct on the part of defendant. The evidence in support of the allegations of the bill is conflicting but it was all taken by the chancellor and he found it to be sufficient. He found appellee to be a mild mannered gentleman, a kind, faithful, and indulgent husband. He found appellant to be hyper sensitive, self centered, and petulant, and guilty of directing her emotional outbursts and sudden tantrums toward appellee frequently and without provocation. Indeed the major portion of their married life appears to have been frequented by domestic squalls that sometimes reached cyclone proportions.

Extreme cruelty as ground for divorce is relative. What constitutes it may be determined by the degree of one's culture, his emotions, nervous reaction or moral sense. It may also be tested by acts or social conduct to which the spouse affected is allergic. The rapid change in social conventions may generate conditions that bring on extreme cruelty. One spouse may indulge a habit to which the other is allergic that would be extremely painful, depending on the nature of the affected spouse. A wife that chews tobacco may strain the connubial relation and the husband that dips snuff may do likewise. Any habitual indulgence on the part of one spouse that causes mental torture, undermines the health, or tends to dethrone the reason of the other, is sufficient to constitute extreme cruelty as ground for divorce.

From all the record discloses, the parties to this cause were so far at variance in age, emotions, aspirations, and outlook that there was no common ground on which their differences could be fused. The hymeneal vow counted for nought. They reached the point that everything the one did irritated the other, both wound up in the hospital, they annoyed each other to distraction talking about their ailments and when this appeal was taken, she had been treated by twelve different doctors.

But this often happens when an old man plunges into the matrimonial pool with a young woman. They are product of different cultures and experience teaches that their natures do not always fuse easily. He lives in the past; she lives in the future. She chews gum while he smokes his pipe. At the table, she calls for calories and vitamins; while he calls for hog and hominy. She likes rag time but he prefers "In the Sweet By and By." She can dance all night but nature drives him in with the swallows. Unless he be her father, there is in the very nature of the sit-

uation, little about an old man to excite the interest of a young woman and unless he is in the market for a good nurse, there is no basis for an old man to become enamored of a young woman.

Furthermore, there is no biological ground on which such a union may be expected to wear. Man in his late fifties and up, doesn't derive his pleasures from the same sources that he did in his thirties. Time has exacted its toll and the net result of such exaction has thinned his hair, lengthened his waist line, shortened his wind, chilled the enthusiasms of his youth, and dulled or frozen other attributes. Science knows no process by which these may be restored but with it all, there is yet in his sky a cloud with a silver lining. His mental curve has not taken a downward plunge. Henceforth his pleasures must be of the mind and if he reacts philosophically to this state, he justifies his creation in the image of God.

We find no reason to reverse the chancellor either as to the sufficiency of the bill of complaint or the evidence to support it. In this holding, we do not overlook the contention of appellant that all material allegations of the bill must be supported by corroborating evidence. We hold that if the evidence as a whole supports the bill, it is sufficient.

What we have said disposes of the main appeal. On the cross appeal, it is contended that the allowance of alimony for appellant and the amount allowed as fees for her counsel were excessive and should be reduced.

When the chancellor was about to ascertain the faculties of the parties for the purpose of fixing attorneys' fees and alimony, complainant by counsel volunteered the information "that he is financially able from his income to pay to the defendant any sum or sums which the Court may award alimony, suit money, or attorneys' fees to the defendant."

On the basis of this admission, the chancellor decreed $7500 to be a reasonable fee. At first blush, this would seem high as fees in divorce cases usually run but the record discloses that the litigation ran over a period of three years, that it was vigorously contested by very able counsel, that five different firms of attorneys were employed by appellant at different times (why so many is not disclosed) that an immense record including two hundred pages of briefs has been lodged here by appellant and that many conferences, hearings, and proceedings were had in the court below, and several trips were made to appear in this court. The Chancellor took all the evidence, made numerous orders in the cause and we must presume, knew the faculties of the parties. Having nothing of the latter element before us, we cannot say that he abused his discretion.

What we have said about attorneys' fees applies to the question of alimony. It may be further said on the latter point that appellee married appellant in robust health, that she has gotten into a highly nervous condition, that her health is otherwise impaired, and that her personal estate is very small. We do not overlook the contention of cross complainant that during their married life, he gave her property amounting to twenty-five thousand dollars but this is shown to be of speculative value and produces very little income.

The judgment is therefore affirmed.

Affirmed.

WHITFIELD and BUFORD concur.

THOMAS, J., agrees to conclusion.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.