90 So.2d 115 (1956)
Thelma M. GROSSMAN, Appellant,
v.
Martin GROSSMAN, Appellee.
Supreme Court of Florida. Division B.
October 24, 1956.
Leo M. Alpert, Miami, for appellant.
L.J. Cushman, Miami, for appellee.
ROBERTS, Justice.
The appellee, Martin Grossman, filed a suit for divorce against his wife, Thelma, appellant here, alleging extreme cruelty. The wife counterclaimed for divorce on the same ground and asked that the custody of their two children, aged 4 and 3, be awarded to her, together with temporary and permanent alimony, support money, counsel fees and suit money. At the hearing on the wife's petition for temporary attorney's fee and suit money, the husband's attorney moved orally that the husband's suit be dismissed without prejudice. The motion was granted, and the cause was tried before the Chancellor on the wife's counterclaim for divorce. Thereafter, the Chancellor entered an order finding that the wife had failed to prove her counterclaim and dismissing her complaint. This appeal by the wife followed.
Unless the Chancellor misapplied a settled rule of law or misapprehended the legal effect of the evidence as a whole in arriving at his conclusion that the wife failed to prove her claim, his decree must be affirmed. McDade v. McDade, 107 Fla. 552, 146 So. 228.
The parties were married in 1947 and have two children, born in 1950 and 1951. The wife testified that from the very first, *116 her husband criticized everything she did and that "there was nothing that I could do that was right. He seemed to dislike me." On one occasion, he threw across the room a plate of eggs that were not cooked to suit him. Another time, he threw away a screen that the wife had painted and of which she was very proud. Again, he threw away an article of wearing apparel that he did not approve of. When the wife was pregnant with her first child, there was an argument about an overnight fishing trip and, when he returned to find that the wife was not home (she was spending the night with a girl friend), he packed up his clothes and moved. He stayed away almost two weeks on this occasion. About two years before the divorce suit, after an argument over a trip to New Jersey, he moved out again. This time he came back in four or five days. When the wife had been home from a European trip (taken at her mother's expense) about two weeks, he moved out again  saying that he "was through playing games" and was gone for good this time. He then filed the suit for divorce which initiated the instant litigation, alleging that the wife "over a period of several years * * * has pursued a course of conduct calculated and intended by her to cause Plaintiff great and excruciating anguish in mind and body and she well knows that her said conduct has said effect upon Plaintiff; she has repeatedly stated to Plaintiff that she does not love him; that she cares nothing for him and that she wants a divorce and wants to be free or to be rid of him; that for many, many months she has repulsed every advance made by Plaintiff toward her and has constantly exhibited toward Plaintiff a cold, cruel, heartless disposition and has refused to take any care of her household affairs and duties; * * *" As noted, he dismissed his complaint, without prejudice, during the first hearing; and during the trial on the wife's cross complaint, he testified that until his wife came back from her European trip she had been kind, loving, indulgent and affectionate.
The wife's testimony as to her husband's constant criticism of her was corroborated by her mother, who lived in the home with them. The husband testified that he "thought" he treated his wife with consideration. When asked if he had been "constantly critical of everything she had done," he said "I don't think I have been. In fact, I know I haven't been." He explained the screen incident by stating that it did not allow enough passage way between the kitchen and dining room and was in his way, so he threw it away. He said he did not rip the article of wearing apparel (a halter top, worn with shorts) from his wife's body (as stated by her) but merely threw it away because it was "too exposing." He did not explain the egg incident. He said he did not leave his wife after the fishing trip incident  that he moved out of the house so that she would come back to the house, "so she wouldn't be elsewhere unattended." He said his wife moved back the next day, but does not explain why he stayed away twelve days. As to the argument over the New Jersey trip, he stated that his wife was angry because he wouldn't take her to New York to visit while he attended a business conference in New Jersey; that she wouldn't cook his meals for two or three days and that he moved out because he "couldn't live with a woman who wouldn't feed me and wouldn't be a wife to me." He explained his third and last defalcation by stating that his wife was very cool toward him after her return from Europe and didn't appreciate his allowing her to go. His departure seems to have been precipitated by a remark his wife made to his employer, which he termed "embarrassing," when, in replying to the employer's comment that the husband "did a swell job" of looking after the children while the wife was away, the wife replied "he had nothing to do at all. The maid was there and his mother was there."
It was shown that, when the husband came home from work (usually from 7:00 to 8:00 P.M.) the children would be whisked away to their playroom so they wouldn't *117 disturb their father during his evening meal. The wife's mother, who lived with them, apparently because of a financial contribution she made toward the acquisition of the home, did not have her meals with them. When the husband came home, the wife would kiss him, and the husband would turn his cheek to allow her to do so.
Our impression from the entire record is that the husband was a nervous, supersensitive, undemonstrative individual, whom it was impossible for his wife to please. He was, however, a kind and loving father and continued to provide for his family during their separation, until the wife's decision to proceed with her cross complaint for divorce after he had dropped his divorce suit. The Chancellor himself found that both parties were "nice people" but simply incompatible  and he stated that if that were a ground for divorce in this state he would grant it.
We think the Chancellor overlooked the line of cases in this state, beginning with Diem v. Diem, 1940, 141 Fla. 260, 193 So. 65, holding that extreme cruelty, as a ground for divorce, is relative. "What constitutes it may be determined by the degree of one's culture, his emotions, nervous reaction or moral sense. * * * Any habitual indulgence on the part of one spouse that causes mental torture, undermines the health, or tends to dethrone the reason of the other, is sufficient to constitute extreme cruelty as ground for divorce." Diem v. Diem, supra, 193 So. 65, 66. Accord: Collins v. Collins, Fla. 1956, 88 So.2d 604; Loomis v. Loomis, 1944, 155 Fla. 355, 20 So.2d 125.
Even though we accept as true the husband's testimony that he had not been constantly critical of everything his wife had done, we have no doubt that he criticized her often enough that the wife felt she lived in a constant aura of criticism, although perhaps not openly expressed at all times. And despite the husband's explanation of the reasons for his leaving his wife on three occasions, we think his moving out still smacks of the little boy who, when crossed, picks up his marbles and goes home  and is back in the game a half-hour later. Unfortunately, the effect of such a stratagem on a wife is far more disastrous than in a game of marbles. The wife testified that, as a result of the emotional strain and tension of her married life, she developed asthma and would have an attack after each argument with her husband. She has not had an attack since her husband left her. Nor can the effect on the wife of the husband's unfounded suit for divorce be discounted. "The malicious institution of unfounded and unwarranted litigation by one spouse against the other may amount to cruelty or personal indignities." Nelson, Divorce and Annulment (2d Ed.) Sec. 6.23, p. 278-279. See also Wilson v. Wilson, 271 Ky. 631, 112 S.W.2d 980; Hansen v. Hansen, Tex.Civ.App. 1936, 96 S.W.2d 548; Roberts v. Roberts, 1948, 68 Idaho 535, 201 P.2d 91.
It may be that the husband did not deliberately intend to cause the wife mental pain and suffering by his actions above referred to  at least, insofar as his critical attitude was concerned. But it is not necessary that a course of conduct be deliberately undertaken for the purpose of causing mental pain and suffering, in order to constitute "extreme cruelty" under the statute; it is sufficient if it actually has that effect. Diem v. Diem, supra, 193 So. 65.
We think that in all the circumstances here, the husband's conduct was sufficient to constitute "extreme cruelty" under the statute and that the Chancellor erred in dismissing the wife's cross complaint.
Accordingly, the decree appealed from is reversed and the cause remanded for the entry of a decree of divorce and such other *118 orders as the Chancellor may deem to be fit, equitable and just.
It is so ordered.
DREW, C.J., and THOMAS and O'CONNELL, JJ., concur.