CARROLL, CHAS., Judge.
The appellant Marion Iona W. Lentz, who was the defendant below, has appealed from a final decree of divorce granted to the plaintiff husband on the ground of extreme cruelty, in a suit in the circuit court in Dade County.
Appellant’s main contentions are that the testimony of the plaintiff husband was insufficient to establish extreme cruelty, and that there was insufficient corroboration of plaintiff’s testimony.
The parties were married in 1935. Three children, all boys, were born of the marriage, their ages at the time of the trial being 15, 19 and 23 years.
The husband testified that the defendant insisted on obtaining a job and working during the day, contrary to his desires and the welfare of the children; that appellant had physically and verbally abused him; that she inflicted certain physical violence upon him by scratching, biting and kicking, called him vile names, falsely accused him of infidelity, belittled him before others, and otherwise nagged and quarrelled with him over their differences. He further testified that the stress of the constant conflicts with' his wife ultimately brought on a *817 coronary, or heart attack, which confined him to bed for some six weeks, following which he separated from the wife, and left the marital domicile for Florida.
The defendant wife testified that her job had enabled her to pay the mortgage on their residence, and did not interfere with her duties in the home or care of the children; and that indeed, the plaintiff did not object to her working. She denied that the plaintiff had suffered a heart attack, and testified that “he had a hypertension which they put him to bed for a week and a half simply as precaution.” She denied striking the plaintiff or laying a hand upon him other than in self-defense. She admitted swearing, but denied “vulgar” cursing. And she insisted that plaintiff kept late hours; came home with lipstick on his collar, and tried to choke her several times.
The extent and nature of conduct which will constitute extreme cruelty have been set forth by the Supreme Court as follows: In Diem v. Diem, 141 Fla. 260, 193 So. 65, 66, it was said:
“Extreme cruelty as ground for divorce is relative. What constitutes it may be determined by the degree of one’s culture, his emotions, nervous reaction or moral sense. It may also be tested by acts or social conduct to which the spouse affected is allergic. The rapid change in social conventions may generate conditions that bring on extreme cruelty. One spouse may indulge a habit to which the other is allergic that would be extremely painful, depending on the nature of the affected spouse. A wife that chews tobacco may strain the connubial relation and the husband that dips snuff may do likewise. Any habitual indulgence on the part of one spouse that causes mental torture, undermines the health, or tends to dethrone the reason of the other, is sufficient to constitute extreme cruelty as ground for divorce.”
In Windham v. Windham, 144 Fla. 563, 198 So. 202, 204, the court said:
“ * * * The rule cited as applicable to the facts adduced is that a divorce on the ground of cruelty will be denied where there is no actual bodily violence unless the treatment complained of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence so as to render it impracticable to discharge marital duties. The following cases are cited: Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694; Palmer v. Palmer, 26 Fla. 215, 7 So. 864; Beekman v. Beekman, 53 Fla. 858, 43 So. 923; Trigo v. Trigo, 90 Fla. 60, 105 So. 123; Hancock v. Hancock, 55 Fla. 680, 45 So. 1020, 15 L.R.A.,N.S., 670; Hayes v. Hayes, 86 Fla. 350, 98 So. 66; Baker v. Baker, 94 Fla. 1001, 114 So. 661; Kellogg v. Kellogg, 93 Fla. 261, 111 So. 637; Van v. Van, 100 Fla. 612, 129 So. 886; Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L.R.A.,N.S., 577; Dean v. Dean, 87 Fla. 242, 99 So. 816; Donald v. Donald, 21 Fla. 571; Hickson v. Hickson, 54 Fla. 556, 45 So. 474; Phelan v. Phelan, 12 Fla. 449; Fuller v. Fuller, 23 Fla. 236, 2 So. 426. * * *"
Plaintiff’s testimony in the instant case tended to show (1) certain physical violence, and (2) a pattern of other abuse which could constitute mental cruelty. The combination of these grievances, according to the plaintiff’s uncorroborated testimony on this point, culminated in a heart attack. Under the authorities quoted above and the other applicable law in this regard (see 10 Fla.Jur., Divorce, etc., §§ 16 et seq.), we must reject appellant’s contention that plaintiff’s testimony of violence and mental abuse in and of itself would not be sufficient to justify the chancellor’s decree of divorce. Taking plaintiff’s testi- *818 jnony alone, and assuming that the law made no further requirement of proof to support a divorce, we could not hold the learned chancellor in error.
However, appellant further contends that the plaintiff did not corroborate his testimony with sufficient competent evidence to entitle him to a divorce. It is therefore necessary to examine the testimony offered as corroboration.
At the trial, the plaintiff, in addition to his own testimony, presented two witnesses and two depositions. The witnesses, residents of Dade County, Florida, were the sales manager of his employer and his landlord. They corroborated his Florida ¡residence, and testified as to his wages or income. They gave no evidence to corroborate his testimony relating to grounds of divorce.
Prior to resting, plaintiff presented depositions of John William Snyder and his wife Elizabeth Snyder, in which Snyder testified that he had known the plaintiff for eleven years, though he had only “met” the defendant four times; that on three occasions he had taken the plaintiff home after playing golf with him, of which he stated as follows:
“On three occasions, returning to his home, at 1934 Sparks Street, Philadelphia, Pennsylvania, after playing golf, she had remarked tO' him ‘What the Hell are you playing golf for when you should be out working’; ‘Why the Hell aren’t you home taking care of the children’; ‘Why the Hell didn’t you stay home and look after the family instead of being out golfing.’ When she had mentioned that he should be out working she meant his part-time sales job, selling clothing.”
Snyder also testified that he had once been with plaintiff on an afternoon in August, 1953, when plaintiff telephoned his wife, and during the call, was unjustifiably accused by her of being drunk; that he drove plaintiff home about 7:30 or 8:00 o’clock P.M. thereafter on that day and defendant commented: “You have one Hell of a lot of nerve, coming home at this hour”; and also testified that plaintiff “occasionally” had complained that his wife was “driving him crazy.” Mrs. Snyder’s deposition also was presented as corroboration. She had no independent knowledge of defendant’s conduct, and aside from confirming as correct what her husband had related in regard to the August, 1953 incident mentioned above, at which she had been present, she added nothing.
Clearly the evidence presented by the plaintiff as corroboration fell short of that which is required. Also, an examination of the evidence presented by and on behalf of the defendant wife shows that it failed to contain or supply the needed corroboration.
The defendant wife’s case consisted of her own testimony, as summarized herein-before; testimony of her 19 year old son Robert and certain depositions. The parties’ 19 year old son, Robert, testified that the defendant always tended to his needs; that the house was well kept; and that the plaintiff had never objected to the mother working. He denied that defendant had ever used vulgar language to his father in his presence, or that she had struck him. He testified that his mother would get “upset” when his father was late in coming home, but denied that she used vulgar language. The 15 year old son Stephen, testified on deposition that he remembered no loud vulgar talk before him; and that his mother had taken care of his father when he was ill. Some five friends or neighbors of the couple, and their pastor, testified on depositions taken by the wife. Since the substance of this testimony was favorable to the defendant, we need not particularize it in evaluating the sufficiency of the corroboration of plaintiff’s testimony.
A divorce may not be granted on the uncorroborated testimony of the plain *819 tiff seeking a decree. What is sufficient corroboration is determined by the particular circumstances of the individual case. See, e. g. Martin v. Martin, Fla.1953, 66 So.2d 268; Dworkis v. Dworkis, Fla.App. 1959, 111 So.2d 70.
As was said in Martin v. Martin, Fla.App.1958, 102 So.2d 837, 839:
“It has been firmly entrenched in the Florida jurisdiction that the uncorroborated testimony of a plaintiff in a divorce action, without more, is not sufficient to support a valid decree of divorce. Dean v. Dean, 1924, 87 Fla. 242, 99 So. 816; Morgan v. Morgan, Fla.1949, 40 So.2d 778; Martin v. Martin, Fla.1953, 66 So.2d 268; Garland v. Garland, 1947, 158 Fla. 643, 29 So.2d 693, and Holmes v. Holmes, Fla.1957, 95 So.2d 593. What will amount to a sufficient corroboration of the cause of action must be determined by the circumstances of each case. Martin v. Martin, Fla.1953, 66 So.2d 268. However, it is not required to corroborate every detail of the testimony of the party seeking the divorce; corroboration is sufficient if it is consistent with the testimony of the party seeking the divorce and tends to satisfy the impartial and reasonable mind that such testimony is true. Chisholm v. Chisholm, 1929, 98 Fla. 1196, 125 So. 694. * * *”
However, corroborative testimony must support and substantiate the material and controlling facts as to the acts and elements vital and necessary to the granting of a divorce. Dean v. Dean, 87 Fla. 242, 99 So. 816; Garland v. Garland, 158 Fla. 643, 29 So.2d 693; Morgan v. Morgan, Fla.1949, 40 So.2d 778; 27A C.J.S. Divorce § 136c (2) (b), pp. 454-461; 10 Fla.Jur., Divorce, etc., § 40.
 We are impelled to conclude that there was insufficient corroboration to support the plaintiff’s testimony, and that the learned chancellor was in error in granting to the husband a decree of divorce. There was no corroboration of the husband’s testimony as to physical violence. Also, the plaintiff’s charge that his wife’s-conduct toward him brought on his illness went uncorroborated. As pointed out in Diem v. Diem, supra, in the absence of physical violence, conduct of an offending spouse, to constitute extreme cruelty as a ground for divorce, must be an “habitual indulgence on the part of one spouse that causes mental torture, undermines the health, or tends to dethrone the reason of the other.” [141 Fla. 260, 193 So. 66.] The evidence offered to corroborate habitual indulgence of the wife in misconduct toward the husband of that character and degree was unsubstantial and insufficient for the purpose.
Accordingly, the decree appealed from is reversed.
Reversed.
HORTON, C. J., and PEARSON, J., concur.