MANN, Judge.
Terence Godfrey Ashmore is English, and as a consequence suffers a language disability in the United States. His appeal from the judgment awarding his wife a divorce is grounded mainly on his belief that he has been charged with “cruelty” and that his career on the English Bench will suffer as a result.
We can understand that a judge who is cruel and barbarous and inhuman and merciless would justly experience the removal from office and frustration in advancement which such a person would deserve. But Ashmore has not been charged with cruelty. He has been charged with ex *425 treme cruelty, which is hardly serious at all.[1]
The evidence shows that Ashmore met his wife in Palm Beach while on Christmas holiday last year. They were congenial, and she, having the means to travel, went to England and they were married. They stayed in England a week and she came home. He came to Palm Beach in March and spent three weeks at her home. While here he expressed a preference for British servants, an aversion to dogs and a belief that children should be in boarding school. She doesn’t drink but he had six or seven a day. He wears his shirts and socks and underwear more than once, which may be frugality in London but is a faux pas in Palm Beach. He even ventured that no man should wear a deodorant. That is probably the most unAmerican activity with which he is charged. He was said to be overly friendly to the lady seated next to him at dinner, to the annoyance of the lady, her husband and the appellee. This demonstrates at least a disregard of the fact that we Americans are much more reserved than the British and less responsive to the easy familiarity which might, for all we know, come naturally to the appellant.
The result of all of this extreme cruelty was gastric upset, which disappeared when he did, tending to prove that the marital relationship could not be enjoyed in good health.[2]
The trial judge granted on June 5 an extension of time until July 15 in which he might plead. He denied a motion for continuance made just prior to the time set for final hearing, but scrupulously directed to the plaintiff interrogatories addressed to her, and no information which would refute her allegations was elicited.
The appellant’s suggestion that the Florida court is without jurisdiction is arguable, but for reasons neither side has urged. Ashmore suggests that the appellee’s activity toward securing permission of the Circuit Court in Palm Beach County to change the residence of her children, whose custody she exercises pursuant to decree of that court, to England, coupled with the expressed intention of joining him there, amounts to such a change in domicil as defeats the jurisdiction of Florida courts to deal with her marital status. There is no evidence that she acted on that intention, and the intent alone does not suffice.[3]
We perceive one question which ought to be argued seriously. This is the question whether upon marriage the appellee lost her Florida domicil by operation of law and became a domiciliary of England in spite of her retention of her home here. Apart from this question, which neither side has yet addressed itself to, the appeal is without merit and should be dismissed on motion. We treat the motion to dismiss as a motion to strike and grant it except for the assignment of error directed to jurisdiction. We dispense with oral argument pursuant to Florida Appellate Rule 3.10(e), 32 F.S.A. and allow twenty days from this date within which the appellee may serve her brief. Pursuant to F.A.R. 3.7(c) we allow thirty days after appellee’s mailing via air mail her brief to appellant, within which time he may file a reply brief if he desires to do so. Upon the expiration of that time we will decide the sole remaining question.
*426 The appellee’s motion to strike the appellant’s brief on the ground that it was filed on paper longer than the rules allow is denied. We mention the matter only to show that the appellant is not alone in the frivolous engagement of the court’s attention.
Ordered accordingly.
PIERCE, Acting C. J., and McNULTY, J., concur.

. See 8 Fla.Law & Practice, Divorce & Alimony § 14. In 1969 the Public Health Statistics Section of the Division of Health of the Department of Health and Rehabilitative Services reported 34,600 divorces in Florida, of which 30,345 were grounded on extreme cruelty.

. See Diem v. Diem, 1940, 141 Fla. 260, 193 So. 65; Parsons v. Parsons, 1944, 154 Fla. 299, 17 So.2d 223. Compare the logic of British matrimonial law as explained by Sir A. P. Herbert in, e. g., Holy Deadlock; Some Misleading Cases in the Uncommon Law.

. See In re Marrett, 1887, 36 Ch.Div. 400: In re Estate of Jones, 1921, 192 Iowa 78, 182 N.W. 227; Restatement (Second), Conflict of Laws (Tent.Draft Xo. 2, 1954) § 15(3).